**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carl A. DeMICHAEL,
Defendant-Appellant.**

No. 82–1388.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1982.

Decided Oct. 29, 1982.

Rehearing and Rehearing In Banc
Denied Jan. 20, 1983.

Waring R. Fincke, Shellow, Shellow & Glynn, Milwaukee, Wis., Stephen J. Herzberg, Mount Horeb, Wis., for defendant-appellant.

* The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsyl-

Lawrence O. Anderson, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before WOOD and POSNER, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

After a jury was selected and sworn, defendant and the prosecution negotiated a four-page handwritten stipulation or "agreement of the parties with respect to the disposition of the above-captioned matter." This agreement provided that "plaintiff and DeMichael have entered into a [sixteen-page typed] stipulation of facts and expected testimony which the Court may consider in determining the defendant's guilt or innocence on Count 1 of the superceding [sic] indictment in this case." Defendant DeMichael signed both stipulations and in open court confirmed and agreed to the four page handwritten stipulation filed on his behalf by his counsel Waring R. Fincke. (Tr. 85–86).

It should be noted that the agreement made by defendant DeMichael envisaged "disposition" of the case. That was to be accomplished by a determination by the Court regarding "the defendant's guilt or innocence on Count 1" and in making such determination the Court was to "consider" the "stipulation of facts and expected testimony" contained in the 16-page typed stipulation.

The reason the Government agreed to disposition of the case in this matter was its desire to obtain restitution for the victim of the fraud. This relief was not obtainable through a conventional jury trial but required voluntary action by the defendants. The Court co-operated by agreeing to postpone the date of sentencing in order to give defendants time to raise the money. The agreement anticipated conviction by the Court in a non-jury trial; in fact the State of Wisconsin's agreement to refrain from

vania, sitting by designation.

further prosecution was conditioned upon a conviction at the trial level, either by jury trial or non-jury trial. In the event of a reversal on appeal, Wisconsin would accept that outcome and observe the agreement not to prosecute further. But in the event of acquittal at the trial level the State would be free to take further action.

All parties agreed that the contentions raised in defendant's pre-trial motions (and post-trial motions if needful under the rules to preserve the points on the record) were preserved for consideration by the Appellate Court. This, indeed, was DeMichael's chief concern and principal defense. The stipulated facts sufficed to establish his guilt of the home improvement fraud with which he was charged; his reliance was on the defense of "vindictive prosecution" and violation of a prior plea agreement and double jeopardy.

Since the jury had been sworn in the case at bar, the Court insisted upon elimination of the double jeopardy issue with respect to the instant proceeding; and also insisted, since the jury could not be held in abeyance indefinitely, upon prompt disposition of the case either by stipulation or by jury trial.

Accordingly, after the stipulations had been filed, the Court discharged the jury, and after a recess to review the evidence, proceeded in a non-jury trial to "adjudge Defendant, Carl DeMichael, guilty as charged in Count 1 of the indictment."

From the foregoing summary gleaned from the transcript, it seems clear that the defendant knowingly and intentionally waived his right to jury trial. The contention in this Court to the contrary is an obvious afterthought. He sat through and took part in steps specifically designed to eliminate the impending jury trial, and empower the Court to dispose of the case on the basis of stipulated facts, preserving for appellate review the defenses upon which he really relied. Cf. *U.S. v. Kopel,* 552 F.2d 1265, 1274 (7th Cir. 1977).

DeMichael had been involved in prior State and federal prosecutions for home improvement frauds, and had discussed the case at bar thoroughly with able counsel. On July 25, 1980, as his brief shows, he entered a plea to five counts in a federal prosecution in the Northern District of Illinois at No. 80 CR 285. To postulate his ignorance of the nature of his rights with respect to jury trial would require a wild flight of imagination. There is no basis for finding any harmful error injurious to DeMichael.

It is true that we feel misgivings in the departure from the normal practice of requiring that jury trial be waived "in writing with the approval of the court and the consent of the government" in accordance with FRCrP 23(a). In substance and fact, however, there was a waiver in writing, signed by the defendant, and approved by the Court and the Government. It would be adhering to form over substance, in view of the circumstances of the case at bar, to insist upon an additional separate piece of paper and further colloquy.

We think it proper to emphasize, however, that the proper practice, which should uniformly be observed in the absence of unusual circumstances, is as stated in *U.S. v. Scott,* 583 F.2d 362, 364 (7th Cir. 1978).

We turn now to DeMichael's real arguments as developed in the pre-trial motions which were preserved for appellate review. The first point is "vindictive prosecution." This contention merely asserts that the instant prosecution in Wisconsin is precluded because it was instituted after two State prosecutions in Wisconsin (apparently relating to robbery of an apartment, see 91 Wis.2d 847 and 96 Wis.2d 232) had been dismissed, and the orders of dismissal later reversed by the Wisconsin Supreme Court: and a federal prosecution in the Northern District of Illinois at No. 80 CR 285 had been disposed of on a plea bargain.

That is not enough to constitute vindictive prosecution. That term is ordinarily used to describe a prosecution which is vindictive in the normal sense of the word, resulting from specific animus or ill will (as the prosecution of all Democrats who violate the election laws, or all gamblers who do not make timely payoffs to the "bag-

man"); or a prosecution which charges a more serious violation ("upping the ante") in retaliation for the exercise of a legal or constitutional right in connection with the original charge. *Blackledge v. Perry,* 417 U.S. 21, 27–28, 94 S.Ct. 2098, 2102–2103, 40 L.Ed.2d 628 (1974); cf. *Bordenkircher v. Hayes,* 434 U.S. 357, 362–65, 98 S.Ct. 663, 667–69, 54 L.Ed.2d 604 (1978). The latter case holds that there is no "vindictiveness" when the prospect of prosecution for a more serious crime arises in the context of normal exercise of prosecutorial discretion and occurs during legitimate plea bargaining negotiations.

■ Similar legitimate exercise of prosecutorial discretion is all that has been shown in the case at bar. There is no principle of law which requires, as defendant's argument would require, that a person who commits more than one crime may be prosecuted only for one of them. Likewise under our federal system there can be simultaneous federal and State prosecutions where similar or identical offenses under the two systems of law are committed as the result of particular conduct on the part of a defendant. Moreover, there is nothing more than exercise of normal prosecutorial discretion involved if the prosecuting attorney is satisfied to drop one prosecution if an adequate result is obtained in the other, or decides to proceed in the second case if an inadequate result is obtained in the first.

■ There is no vindictiveness as long as the prosecutor's decision is based upon the normal factors ordinarily considered in determining what course to pursue, rather than upon genuine animus against the defendant for an improper reason or in retaliation for exercise of legal or constitutional rights. For example, suppose that bank robbery is an offense against both State and federal law, and in the State courts the robber is convicted only of illegally parking the getaway car in front of the bank, and pays a small fine; is it vindictive if the federal prosecutor seeks an indictment for the federal offense of bank robbery, even though he would have stayed his hand if the defendant had received a substantial sentence in State court? The same reasoning applies if the defendant has robbed banks in several judicial districts. The United States Attorney in one district may properly take into consideration the results of prosecution in another district in determining whether to proceed with prosecution for the offenses committed within his bailiwick.

■ We are satisfied that there has been no impropriety in the actions of the prosecuting authorities, both federal and State, in the case at bar.

■ We now turn to the question whether there has been any impermissible deviation by the Government from the plea bargain with defendant in the case in the Northern District of Illinois. We begin by reaffirming the duty of the Government to respect its bargains. *Santobello v. N.Y.,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

■ It is always unseemly for lawyers to find themselves cast in the role of witnesses testifying regarding cases they are handling. Especially is this true in criminal cases, and with respect to the terms of a plea bargain. Such agreements should be reduced to writing. Indeed, the procedures of Rule 11 FRCrP should be followed, and the terms disclosed to and approved by the Court in accordance with Rule 11(e)(2) and recorded in accordance with Rule 11(g).

Ordinarily the careful observance of the procedure prescribed by Rule 11 will eliminate all possible ambiguity as to the terms of the agreement, although in exceptional circumstances (especially during the transitional period before the legitimacy of plea bargaining and the appropriate procedures to be followed were fully understood) an evidentiary hearing is not absolutely precluded. *Blackledge v. Allison,* 431 U.S. 63, 74, 82, 97 S.Ct. 1621, 1629, 1633, 52 L.Ed.2d 136 (1977).

It is most distasteful to be confronted with conflicting testimony by lawyers with respect to the terms of an agreement which ought to be clear and indisputable in its

terms. Fortunately we are able to dispose of the case at bar without becoming involved in questions of credibility.

Defendant's attorney James Shellow, who negotiated the Illinois plea bargain, testified that he was concerned with federal investigations in Colorado and Indiana against DeMichael, and wished to terminate all then pending federal investigations, but agreed to make an exception for tax matters. He admitted that there was a document memorializing the plea agreement in a written memorandum, (GX 2), but asserted that this did not include all the items agreed to. He did not insist on an agreement covering the Hobl matter (involved in the case at bar) because he thought that that was merely a State case in Wisconsin, and not a federal matter. He accuses the federal attorney with whom he was dealing of sharp practice because she did not disclose that the Wisconsin prosecutors had been informed by the United States Attorney's Office for the Eastern District of Wisconsin that the federal government would proceed with the case involving fraud against Hobl. He attacks her testimony that she was authorized only to dispose of the Illinois prosecution on the ground that she worked for a "Strike Force" office that operated also in Wisconsin.

Regardless of the truthfulness of her testimony as to her authority to negotiate, it seems good practice for the federal prosecutors handling cases within a given district to limit their representations to the cases at hand. If defendants wish assurances relating to more extensive geographical areas they should seek specific agreements expressly covering such matters and insist upon unquestionable authorization from superior officials in the Department of Justice.

In the disclosure of the plea agreement actually presented to the Court in the Illinois case it was stated:

> The Government agrees that no additional charges will be brought in the Northern District of Illinois for the period covered by this indictment involving the following companies: A–OK Heating Company, or some variant of that name; All State Heating Company or some variant of that name; Aaron Heating Company; World Wide Heating Company; Common Wealth Heating Company; and Shure-Fire Heating Company. (app. 33)

These were names under which defendant and his coconspirators had done business in the course of their widespread home improvement frauds.

Defendant contends that prosecution in the case at bar is precluded under the above-quoted portion of the Illinois plea agreement because when one of the coconspirators was arrested at Hobl's home he was driving a truck registered to Shure-Fire Heating Company and a copy of the title for the truck was in the glove compartment as well as a blank contract bearing the name Shure-Fire Heating Company.

However, these are immaterial circumstances. The situation is no different from what it would have been if a workman came to the job site in his own car, or a taxicab, or was dropped off by a friend. The testimony discloses that the alias being used by defendant and his coconspirators, that is to say, the name under which they were doing business when they entered into their fraudulent contract with Hobl was Capitol Chimney and Roofing Company (app. 59).

The Hobl case cannot be regarded as a charge "involving ... Shure-Fire Heating Company" within the meaning of the Illinois plea agreement.

The contention that the prosecution in the case at bar constituted double jeopardy (if that argument is still being pressed in this Court—it is not specifically addressed by defendant's brief) is obviously merely a restatement of the argument regarding violation of the plea agreement, and is hence equally unmeritorious.

For the foregoing reasons the judgment of the District Court is AFFIRMED.