**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Miguel RODRIGUEZ,**
**Defendant–Appellant.**

**No. 88–2952.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1989.
Decided Nov. 1, 1989.

Thomas M. Durkin and Robert S. Rivkin, Asst. U.S. Attys., Office of the U.S. Atty., Chicago, Ill., for the U.S., plaintiff-appellee.

Kenneth L. Cunniff, Chicago, Ill., for Miguel Rodriguez, defendant-appellant.

Before EASTERBROOK and MANION, Circuit Judges, and GRANT, Senior District Judge.*

EASTERBROOK, Circuit Judge.

Miguel Rodriguez, a janitor working (and living) in a union hall, sold drugs as a sideline. Agents intercepted one of his couriers, who agreed to return the shipment on a pretext. The courier met Rodriguez at the door of the union hall; Rodriguez took the drug; the agents swooped in and arrested him. A team remaining at the union hall corralled Rodriguez's wife,

* Hon. Robert A. Grant, of the Northern District of Indiana, sitting by designation.

who let them into the janitors' quarters, where the agents found drugs, money, and records. A group of agents questioned Rodriguez, who made some incriminating statements; after his appearance before a magistrate and the appointment of counsel, Rodriguez made still more incriminating statements to agents of the FBI in the absence of counsel.

## I

After a bench trial, this evidence produced a conviction on six counts of possessing cocaine and marijuana with intent to distribute, and of conspiring to do so, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district judge sentenced Rodriguez under the Sentencing Guidelines to nine years' imprisonment, followed by five years' probation and then ten years' supervised release. Rodriguez's principal arguments on appeal concern the seizures and statements that supplied the principal evidence against him. The judge referred the motion to suppress to Magistrate Balog, who held a three-day evidentiary hearing and, on the basis of proposed findings of fact, recommended that the court deny the motions. Judge Aspen adopted Magistrate Balog's report. Rodriguez contests the conclusions of that report and raises a preliminary contention that because the district judge adopted the magistrate's report, the court of appeals must review both findings of fact and conclusions of law *de novo*.

The argument for *de novo* appellate review is that the magistrate, not accorded the tenure and salary guarantees of Article III, cannot make binding decisions. An Article III judge must review *de novo* any contested findings of fact and proposed conclusions of law. 28 U.S.C. § 636(b)(1)(C). See *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); cf. *Gomez v. United States,* — U.S. —, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). When the district judge abdicates to the magistrate, the argument runs, the appellate judges must supply the necessary *de novo* review. The Fifth Circuit adopted that view, *United States v. Herbst,* 641 F.2d 1161, 1167 (5th Cir.1981), and the Eleventh Circuit took it over by inheritance, *United States v. McKennon,* 814 F.2d 1539, 1543 n. 6 (11th Cir.1987). Without recognizing the conflict, we took the contrary position in *United States v. Hardin,* 710 F.2d 1231, 1235–36 (7th Cir.1983). See also *United States v. Thompson,* 876 F.2d 1381, 1383 (8th Cir. 1989) (using deferential review). Rodriguez wants us to abandon *Hardin* and adopt *Herbst,* but we think the approach of *Hardin* sound.

Rodriguez is entitled by statute to *de novo* review of the subject. Under *Raddatz* the court may provide this on the record compiled by the magistrate. Rodriguez treats adoption of the magistrate's report as a sign that he has not received his due. Yet we see no reason to infer abdication from adoption. On occasion this court affirms a judgment on the basis of the district court's opinion. Affirming by adoption does not imply that we have neglected our duties; it means, rather, that after independent review we came to the same conclusions as the district judge for the reasons that judge gave, rendering further explanation otiose. When the district judge, after reviewing the record in the light of the objections to the report, reaches the magistrate's conclusions for the magistrate's reasons, it makes sense to adopt the report, sparing everyone another round of paper.

Because the magistrate is an impartial judicial officer, it is easier to justify adopting the report than to justify adopting findings of fact and conclusions of law proposed by a party. See *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 313–14 (7th Cir.1986). Yet when a judge adopts a party's submissions verbatim, appellate review is still deferential. *Anderson v. Bessemer City,* 470 U.S. 564, 571–73, 105 S.Ct. 1504, 1510–11, 84 L.Ed.2d 518 (1985). Before *Anderson* a number of appellate courts declined to defer to judicial findings culled from the parties' submissions; perhaps that attitude supplied the impetus for the holding in *Herbst. Anderson* pulled the rug out from under that position. We therefore reiterate the conclusion of *Har-*

*din* that the standard of appellate review does not depend on whether a district judge adopted the magistrate's report or wrote a new opinion. The questions central to this case—whether Mrs. Rodriguez consented to a search (and if so the scope of that consent), whether the agents (as opposed to Rodriguez) initiated the questioning, and so on, depend on findings of fact that we review only for clear error; questions of characterization (was the consent "effective"?) also are fact-specific matters reviewed on a deferential standard. *United States v. D'Antoni*, 856 F.2d 975, 978–79 (7th Cir.1988); *United States v. Hawkins*, 823 F.2d 1020, 1022 (7th Cir.1987); [1] *United States v. Marin*, 761 F.2d 426, 433 (7th Cir.1985). Cf. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933–35 (7th Cir.1989) (en banc).

## II

Judge Aspen found, by adopting Magistrate Balog's report, that Rodriguez lacked a privacy interest in the janitors' room of the union hall and that at all events his wife gave a valid consent to search. Although Rodriguez vigorously contends (and the prosecutor denies) that he has "standing" to object to the search, this is beside the point now that the Supreme Court has said that the initial inquiry is not standing but the nature of the privacy interest invaded. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The locked janitors' room was not open to the world at large, so Rodriguez had some privacy interest in it. Agents could not have busted into the union hall and broken down the door of the janitors' room without invading some (limited) privacy interests. Given the view we take of Mrs. Rodriguez's consent to enter the room, we need not decide whether Rodriguez had an interest sufficient to withstand a search based on proba-ble cause (as this was) in the absence of a warrant.

The parties agree on these facts: The union hall contains living quarters on the third floor that Rodriguez was entitled to occupy. He had separated from his wife, however, and while Mrs. Rodriguez continued to occupy the apartment Rodriguez sometimes camped out on a cot in the janitors' room in the basement. This room contained boxes full of union records, cleaning equipment, and office supplies as well as Rodriguez's cot and a "desk" made by placing plywood across wooden braces. Another janitor uses the room when Rodriguez is not on duty, and although the room is ordinarily locked, employees of the union may enter it to obtain supplies. Agents tore this room apart. Some items they found on the "desk". They opened a briefcase on which Rodriguez's name was written and found money and documents. On top of a stack of boxes full of records they found a closed, blue box containing marijuana. They moved boxes of union records and found, underneath, some ledgers concealing two closed boxes (marked only with the union's address) containing marijuana. In still a fourth small box—a metal filing box marked "Mike", located inside a box of union records—the agents found coffee cans containing rice and cocaine.

The parties do not agree about Mrs. Rodriguez's role in the agents' entree. Rodriguez contended that Mrs. Rodriguez merely acquiesced in the inevitable and that she lacked actual and apparent authority to consent in light of the couple's separation. Agents testified that Mrs. Rodriguez used her key to unlock the janitors' room (a sign of actual authority, see *United States v. Baswell*, 792 F.2d 755, 757–59 (8th Cir.1986)) and consented to their search. Although Mrs. Rodriguez refused to sign a consent form, one agent testified that she said: "If you want to go ahead on in, go on in." Other agents testified that

1. Although *Hawkins* holds that review of *Miranda* questions is deferential, it also suggests that voluntariness of a confession is reviewed *de novo* on appeal. This latter aspect of *Hawkins* has been questioned within the circuit. *Weidner v. Thieret*, 866 F.2d 958, 960–61 (7th Cir.

1989); *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1253–55 (7th Cir.1988) (concurring opinion). Our case does not involve a substantial question concerning voluntariness, and we need not revisit this aspect of *Hawkins*.

Mrs. Rodriguez was "hesitant" and balked at least once, but that when the agents told her that they could obtain a search warrant she said that they could "go ahead and look in the room" or "nodded her head" after repeated requests.

Although this record could have supported a conclusion that Mrs. Rodriguez did not give effective consent, Judge Aspen found that "[h]er only hesitancy was over whether she could consent to the search of the union storage area." Once she resolved that question in her own mind, she approved. This finding is not clearly erroneous.

■ Mrs. Rodriguez's possession of the key gave her apparent authority to consent. Apparent authority is enough. Just as police may have probable cause to act even though their source was lying, so they may act when the person giving consent had apparent authority. *United States v. Miller*, 800 F.2d 129, 133 (7th Cir.1986); *United States v. Sledge*, 650 F.2d 1075, 1077–81 (9th Cir.1981) (Kennedy, J.); *United States v. Isom*, 588 F.2d 858, 861 (2d Cir.1978); *United States v. Peterson*, 524 F.2d 167, 180 (4th Cir.1975); cf. *United States v. Matlock*, 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 996 n. 14, 39 L.Ed.2d 242 (1974) (reserving the question). The question posed by the Fourth Amendment is whether the search is "reasonable", and it is reasonable to act on the basis of apparently valid consent. Going beneath the surface of the information in hand—whether furnished by an eyewitness, see *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 437–41 (7th Cir.1986), or by a person giving consent—would make the outcome of the search depend on niceties of property or marital law far removed from the concerns of the Fourth Amendment. Consents would become untrustworthy unless the police spent additional time investigating the authority of the person who gave consent, which in a case like ours would require knowledge of Illinois domestic relations law and the living arrangements of the couple. Suppressing evidence because of what the police did not know at the time, even though their acts were justified on the basis of what they did know, would inject a random element into Fourth Amendment jurisprudence without serving any of the functions of the exclusionary rule. Denying police the ability to act on the basis of apparent authority would not deter improper conduct; it would instead deter acting on the basis of consents. *Nix v. Alaska*, 621 P.2d 1347, 1349–50 (Alaska 1981). Any wrong done to Rodriguez was done by his wife, not by the agents who entered the room on the basis of her apparent authority. Suppression is an inappropriate response.

■ To say that Mrs. Rodriguez consented to a search of the janitors' room is not necessarily to say that she consented to a search of the items it contained. The prosecutor does not contend that Mrs. Rodriguez had even apparent authority to consent to a search of her husband's briefcase, or that she gave such consent. None of the versions to which the agents testified—whether Mrs. Rodriguez said "If you want to go ahead on in, go on in" or "go ahead and look in the room" or just nodded—included reference to containers such as briefcases. Suppose Rodriguez had checked his briefcase with United Airlines for a flight. United could have consented to a search of its baggage handling facilities, in which passengers anyway lack privacy interests; no one thinks that United could consent to a search of all luggage in its possession. So too with checkrooms at restaurants, parcels in transit with express companies, and other containers in public places. Many a closed container is accessible; opening it requires justification, *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), just as turning over a stereo system to observe its serial number requires justification. *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). See *O'Connor v. Ortega*, 480 U.S. 709, 716, 107 S.Ct. 1492, 1498, 94 L.Ed.2d 714 (plurality opinion), p. 731, 107 S.Ct. p. 1509 (Scalia, J., concurring), p. 737, 107 S.Ct. p. 1505 (Blackmun, J., dissenting) (1987); *Paulino v. United States*, — U.S. —, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989) (White, J., dissenting from the denial of certiorari). *Paulino* involved rif-

fling through a pack of bills found in an automobile, see 850 F.2d 93 (2d Cir.1988), and courts have had considerable difficulty coming up with stable rules to govern searches of things found in cars. There has been no comparable difficulty with containers found in closets or storage rooms, and the United States has not cited a single case approving a search of a closed container in consequence of a general consent to enter the room in which it was found.[2]

All the government's brief says about the subject is: "There is no indication that Maria Rodriguez limited her consent to a specific area or items in the small room. Magistrate Balog found under the totality of the circumstances that Maria Rodriguez gave valid consent to search the entire storage area ... and denied appellant's suppression motion. That finding was not clearly erroneous." Why the question should be whether Mrs. Rodriguez "limited her consent to a specific area" rather than whether she gave consent to open the briefcase is something the United States elected not to address. Neither did Magistrate Balog, who did *not* find that Mrs. Rodriguez "gave valid consent to search the entire storage area". He found that she gave consent to enter the storage area and added, without supporting reasoning: "Under these facts and circumstances the defendant's motion to quash and suppress fails because his rights under the Fourth Amendment were not violated in that he had no legitimate expectation of privacy with respect to items he placed in the storage room." Why a lack of privacy in the room implies a lack of a privacy interest in the contents of the containers remains a mystery.

Magistrate Balog and Judge Aspen may have been justified in bypassing the question, because so far as we can tell Rodriguez did not ask them to differentiate the search of the room from the opening of the containers. At oral argument in this court the prosecution argued that Rodriguez had not preserved his objection to opening the containers. Maybe so, but the prosecutor's argument based on waiver was itself waived. Rodriguez devoted a goodly portion of his opening brief to this point. The brief for the United States meets the argument on the merits—weakly, we think, but on the merits nonetheless. Because the prosecutor did not argue failure to preserve the question for appeal, Rodriguez did not address that potential obstacle in his reply brief. A point raised for the first time at oral argument, when the appellant is in no position to reply, comes too late. We do not allow an appellant to raise new issues in the reply brief, *In re Bear*, 789 F.2d 577, 579 (7th Cir.1986); perforce the appellee may not raise new issues at oral argument, even if the new issue is the other side's waiver. See *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 701 n. 5 (7th Cir.1989); *Lim v. Central DuPage Hospital*, 871 F.2d 644, 648 (7th Cir.1989). Cf. *Barrera v. Young*, 794 F.2d 1264, 1269 (7th Cir.1986).

Because neither side focused on the containers at the evidentiary hearing, we shall remand the case so that Judge Aspen can take further evidence and make additional findings. The consent is adequate to justify looking at (and seizing) materials found on the "desk". It may well be that Rodriguez lacks any privacy interest in the contents of boxes containing union records. But opening the briefcase and the file box

---

**2.** The closest it comes is to rely on *United States v. Shue*, 766 F.2d 1122, 1135–36 (7th Cir.1985). Shue rented a room from Wenta and stored things in a filing cabinet in her basement, without her knowledge. Wenta gave the police express consent to search the basement and the filing cabinet. The court held that Shue lacked a reasonable expectation of privacy in the filing cabinet; nothing of the sort can be said about Rodriguez's expectations concerning the contents of his own briefcase. We have found two cases closer to the subject, but neither is quite on point. In *United States v. Sealey*, 830 F.2d

1028, 1031 (9th Cir.1987), and *United States v. Harrison*, 679 F.2d 942, 946–47 (D.C.Cir.1982), one spouse gave a general consent to search a house, and the police found in cardboard boxes evidence introduced against the other spouse. In each case the boxes were unmarked; in *Harrison* the boxes were not even taped shut. These searches were similar to the searches of the unmarked boxes in the janitors' room and do not suggest that briefcases or boxes emblazoned with the name of a person other than the one giving consent may be searched.

marked "Mike" is harder to justify, and unless new testimony demonstrates that Mrs. Rodriguez had apparent authority to consent to the opening of these containers, and did so, the evidence found in them must be suppressed.

### III

█ Three agents of the FBI accompanied Rodriguez to the federal building after they arrested him during the evening of February 4, 1988. After receiving *Miranda* warnings, Rodriguez "kept questioning whether or not he should have an attorney present." Agent Bellich told Rodriguez that engaging counsel would be prudent, and Agent Shaw instructed the others to cease asking questions. At the FBI's offices, other agents took Rodriguez's fingerprints and asked him some questions, learning that he owned two buildings and some cars; Rodriguez also told the agents about his bank accounts. These questions, which had little to do with the evidence introduced at trial, would have been proper even in the absence of *Miranda* warnings, under the "booking questions" rule described in *United States v. Doe*, 878 F.2d 1546, 1550–52 (1st Cir.1989). Later that night Rodriguez acknowledged his role in the sales, told the agents about other drug transactions, and expressed regret for his deeds. Magistrate Balog concluded that these statements are admissible because Rodriguez volunteered the information. This finding is not clearly erroneous. Agent Close reported that when, without prompting, Rodriguez began to describe his criminal activities, he told Rodriguez not to make any statements; Rodriguez persisted. Once accepted, this removes from the case any question concerning the statements on the night of the arrest.

What happened the next day is another matter. The agents took Rodriguez before Magistrate Balog for initial appearance and a bail hearing. The magistrate appointed as counsel for Rodriguez one of the members of the Federal Defender's staff and ordered Rodriguez released on bond. On the way back to the lockup to sign the necessary papers, out of the presence of Rodriguez's lawyer, Agent Lema urged Rodriguez to cooperate with the investigation. Rodriguez agreed to do so, and Agent Lema took Rodriguez to the FBI's offices, where he signed two waiver forms and confessed. One form dealt with *Miranda* and the other expressly surrendered the right to the presence of retained counsel. The voluntariness of these waivers is not in serious question.[3] What gives pause is the holding of *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), that once the defendant requests counsel at his "arraignment or similar proceeding", *id.* at 636, 106 S.Ct. at 1411, investigating officers may not initiate interrogation except through the defendant's lawyer.

The magistrate's report did not mention *Jackson* or the Sixth Amendment. Magistrate Balog concluded that Rodriguez's waiver of counsel was voluntary—a distinct question under the Fifth Amendment—and went no further. The prosecutor concedes that the Sixth Amendment right attached and that *Jackson* applies but tries to patch things up by arguing, first, that Rodriguez did not "invoke" his right to counsel at the appearance, and, second, that the agent did not initiate questioning but only asked Rodriguez whether he wished to waive his rights. These are contested issues, and appellate judges do not find facts. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986). The district court should make any findings necessary on these subjects.

If we had the power to find facts, we could not accept the prosecutor's argument on the existing record. The proceedings of the hearing at which Magistrate Balog appointed counsel for Rodriguez are not in the record, so there is no foundation for a finding that the magistrate appointed counsel without a request from Rodriguez. Recalling that Rodriguez had said the prior evening that he wanted a lawyer, we think it would be most surprising if Rodriguez

---

**3.** Rodriguez says that he agreed to cooperate to stave off the prosecution of his wife; the magistrate found that no such threats had been made, and the finding is amply supported.

had rejected counsel in open court only to have the magistrate appoint one anyway. When a person appears before a judicial officer and emerges with a lawyer, it is a fair inference that he asked for counsel, thus asserting his Sixth Amendment right. Maybe the transcript will show otherwise, but the prosecutor—whose burden it is to demonstrate the waiver of constitutional rights—must establish that by evidence. Silence in the record is not enough to support, let alone to compel, an inference that Rodriguez did not invoke his right to counsel.

As for the contention that Agent Lema did not "question" Rodriguez but only inquired whether he wished to waive the presence of counsel: it is undisputed that the agent asked Rodriguez to consider cooperating. Although a defendant cannot cooperate without sooner or later waiving a right, the agent went beyond inviting the *waiver* and requested *information*.[4] An invitation of the sort "would you like to waive your right to counsel and talk with us?" would present a tough question; this record does not. To treat the request for information as nothing but an implied request for a waiver would be to gut *Jackson*, which is not the role of an inferior federal court.[5]

Putting all questions of constitutionality to one side, we are surprised to learn that the FBI attempted to inveigle Rodriguez to talk immediately after counsel had been appointed. Rodriguez had become a litigant, and there are sound reasons for requiring one litigant to approach its adversary through counsel. Rodriguez seemed willing to cooperate; he confessed after arrest and bid fair to keep talking. Trying

to continue the conversation outside the ken of counsel in such circumstances unnecessarily endangers the prosecution as well as the defendant's legal entitlements.

### IV

■ Because further proceedings will be necessary after the district judge resolves the evidentiary questions we have outlined, we address a few of Rodriguez's remaining contentions. *United States v. Douglas*, 874 F.2d 1145, 1150–51 (7th Cir.1989), commits this court to deciding, before remanding for a second trial, whether the evidence at the first was sufficient, so that a defendant who ought to have prevailed outright is not subjected to additional proceedings. Rodriguez contends that the evidence on two counts is insufficient because it consists solely in his uncorroborated confession to earlier drug transactions. We disagree with this characterization. The records found during the search demonstrated that Rodriguez had been engaged in the drug business for some time; these records, coupled with the drugs and money, supplied sufficient corroboration to allow a rational trier of fact to find beyond a reasonable doubt that Rodriguez committed the crimes to which he admitted.

■ The last subject that requires comment is the consent to a bench trial. (Other questions are irrelevant in light of the need for further proceedings.) *United States v. Scott*, 583 F.2d 362, 364 (7th Cir.1978), adopted this supervisory rule:

> [B]efore a district court accepts a waiver of jury trial the court will interrogate the defendant to ensure that he understands his right to a jury trial and the conse-

---

**4.** Lema testified: "Well, as I was taking [Rodriguez] back to the lockup, I did approach him and I asked him if he wanted to talk to us, if he wanted to cooperate with us. Mr. Rodriguez didn't answer immediately yes or no. And as far as I understand and I can recollect, he said, you know, 'What is it—what is it that I have to say?' And I just told him, 'Hey, we just want to know everything you know about this whole drug trafficking.'"

**5.** The United States Attorney relies on *United States v. Carrasco*, 887 F.2d 794 (7th Cir.1989),

*Quadrini v. Clusen*, 864 F.2d 577, 585–86 (7th Cir.1989), and *Love v. Young*, 781 F.2d 1307, 1316 & n. 7 (7th Cir.1986). None of these cases dealt with questioning renewed after the appointment of counsel. *Love* was decided before *Jackson* and so does not aid in understanding the scope of that decision. *Quadrini* and *Carrasco* do not mention *Jackson*, and although the Sixth Amendment's right to counsel had "attached" in those cases the opinions do not suggest that counsel had been appointed. *Jackson* establishes a special rule for the period after the appointment of counsel.

quences of waiver. Once the rule goes into effect [in one month], failure to comply will call for reversal on appeal.

*United States v. Delgado*, 635 F.2d 889, 890 (7th Cir.1981), then spelled out the contents of the interrogation required by *Scott:*

> We take this opportunity to advise the trial courts that they should explain that a jury is composed of twelve members of the community, that the defendant may participate in the selection of jurors, and that the verdict of the jury is unanimous. The court should inform the defendant that if he waives a jury, the judge alone will decide guilt or innocence. After informing the defendant of these factors, the trial court should then ascertain whether the defendant wishes to waive his right to a jury trial.

*Delgado* reversed the judgment, without inquiring into prejudice, because the court had not informed the defendants of these things.

The district judge did not follow the requirements of *Delgado* and *Scott.* The full colloquy reads:

> THE COURT: It's my understanding that the defendant wishes to waive his right to a jury trial and the government agrees to that waiver, is that correct?
>
> DEFENDANT: I do, yes.
>
> AUSA: On the part of the United States, the government does agree to the waiver of a jury trial.
>
> THE COURT: Okay. Mr. Rodriguez, I want to advise you that you have a right to have a jury determine the facts in this case. Are you willing to give up that right and have me determine the facts in this case?
>
> DEFENDANT: Yes.
>
> THE COURT: All right. I am going to ask that you sign a written jury waiver which, in fact, says the same thing that you just told me. We will make that part of the record herein.

This exchange is not materially different from the one that led to reversal in *Delgado.* The United States Attorney does not contend that this colloquy complied with *Scott* and *Delgado;* he maintains, however, that we effectively did away with these cases in *United States v. DeMichael*, 692 F.2d 1059 (7th Cir.1982), which affirmed despite the court's failure to advise the defendant as *Delgado* required. We do not give *DeMichael* the same reading as the prosecutor. DeMichael's jury trial was under way when he negotiated a stipulation of facts on which the court would enter judgment, reserving specified issues for appeal. As this was effectively a conditional plea of guilty, we disdained the invitation to set aside the judgment for failure to give a set of warnings designed for a different problem, observing that DeMichael's argument about the jury waiver "is an obvious afterthought." 692 F.2d at 1061. *DeMichael* did not mention *Delgado.* Neither did *United States v. Schmidt*, 760 F.2d 828, 834–35 (7th Cir.1985), another case involving a trial on stipulated facts.

*Delgado* remains this court's view about the exchange that should occur before the court accepts a waiver of the right to trial by jury. These warnings, however, are called for as a matter of prudence. Lesser (even no) warnings do not call into question the sufficiency of the waiver so far as the Constitution is concerned. *Williams v. DeRobertis*, 715 F.2d 1174 (7th Cir.1983) (state courts are not bound by *Delgado* ). Although we warned in *Scott* of automatic reversal, and carried out that threat in *Delgado*, subsequent decisions of the Supreme Court make it clear that automatic reversal is no longer an appropriate response to the failure to follow a supervisory rule. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988); *United States v. Hasting*, 461 U.S. 499, 506, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1983). Supervisory powers—which is to say, common law powers to establish procedures for the courts' internal operations when statutes and rules are silent—must be exercised in accord with rules of positive law. Both statute, 28 U.S.C. § 2111, and a rule with the force of statute, Fed.R.Crim.P. 52(a), provide that the court shall disregard errors that do not affect the substantial rights of the parties.

*Bank of Nova Scotia* accordingly holds that courts may not assert a "supervisory" right to reverse judgments without inquiring whether the error affected substantial rights. That decision supersedes any implication to the contrary in *Scott* and *Delgado*.

Waiver means an intentional relinquishment of a known right. There can be no doubt that Rodriguez knew he had a right to a jury—the venire was in the courtroom when he waived, and he referred to this right in open court. There can be no doubt that Rodriguez knew that he was relinquishing his right to trial by jury. Knowing more of the details of the jury process might facilitate an astute decision about whether to waive or stand on his rights, but a decision need not be wise to be voluntary. Defendants also might benefit from understanding the special dynamics of a jury trial—that the trial will be more formal, that the rules of evidence will be more strictly enforced, that counsel will make flamboyant appeals to the jury that they would not dream of pitching to a judge, and so on. Yet such information is not an essential ingredient of a waiver. *United States v. Roth*, 860 F.2d 1382, 1388 (7th Cir.1988). Williams holds that a defendant may make a knowing, intelligent waiver of the right to trial by jury without receiving the admonitions in the *Delgado* warning. We are persuaded that the waiver here was knowing and intelligent; the omission of the full menu of advice did not affect Rodriguez's substantial rights and is not an independent basis for reversal.

The judgment is reversed, and the case is remanded for further proceedings consistent with Parts II and III of this opinion.