**UNITED STATES of America, Plaintiff,**

**v.**

**Miguel RODRIGUEZ, Defendant.**

**No. 88 CR 138.**

United States District Court,
N.D. Illinois, E.D.

March 7, 1990.

---

William Cook, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Ken Cuniff, Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

On November 1, 1989, the United States Court of Appeals for the Seventh Circuit remanded this case to us for further proceedings consistent with Parts II and III of its opinion. *United States v. Rodriguez,* 888 F.2d 519 (7th Cir.1989). We then ordered the parties to file supplementary briefs on the evidentiary issues remanded and referred the matter to Magistrate Balog to conduct a supplemental evidentiary hearing. The Seventh Circuit has required additional findings as to whether evidence obtained by federal agents in a search of various containers found in a union hall storage room should be suppressed prior to a new trial, and whether statements made to FBI agents following Rodriguez's initial appearance on February 5, 1988 must also be suppressed because they were obtained in violation of Rodriguez's Sixth Amendment right to counsel. Magistrate Balog submitted his Report and Recommendation

to us on February 8, 1990. Rodriguez filed a timely response, partially in opposition to the Magistrate's Report and Recommendation, and partially in an attempt to relitigate matters conclusively determined by this Court and affirmed by the Seventh Circuit. We will not consider Rodriguez's response to the extent it raises arguments that do not pertain to the matters specifically remanded to us for further proceedings. After reviewing the Magistrate's Report and Recommendation, Rodriguez's response, and the transcript of both the supplemental hearing on January 19, 1990, and the original hearing on the motion to suppress on April 8 and April 12, 1988, we make the following additional findings and conclusions.

Regarding the statements obtained on February 5, 1988, the government has conceded, and Magistrate Balog has recommended, that the statements should be suppressed. Accordingly, we hereby adopt the Magistrate's finding and recommendation on this issue, and order that Rodriguez's statements made to the FBI agents following the February 5, 1988 appearance, outside the presence of counsel, should be suppressed.

We next consider the admissibility of the evidence found after a search of the various containers stored in the storage room. Magistrate Balog found that Rodriguez possessed a reasonable expectation of privacy in two of the items—a plastic box labelled "Mike" and a briefcase labelled "Mike Rodriguez." Although Magistrate Balog believed that testimony from the original suppression hearing indicated circumstances sufficient to support a finding that Mrs. Rodriguez had apparent authority and consented to a search of the containers with her husband's name on them, Magistrate Balog recommended suppression because the testimony obtained at the supplemental hearing did not alone establish such a finding. Magistrate Balog apparently read the Seventh Circuit's opinion as making a conclusive determination that any prior evidence was insufficient on the question of Mrs. Rodriguez's apparent authority and consent to search the marked containers, presumably because the Sev-

enth Circuit required "new testimony" on the issue of authority and consent.[1]

However, we believe the Magistrate misconstrued the Seventh Circuit's opinion. Earlier in its opinion, the Seventh Circuit had concluded that the question as to whether Mrs. Rodriguez had authority and gave consent to open each of the closed containers was a question that the Magistrate, and therefore we, had not addressed. *Id.* at 524 ("Magistrate Balog ... did *not* find that Mrs. Rodriguez 'gave valid consent to search the entire storage area.'"). That question was not addressed because the Magistrate had determined that the evidence found in the containers should not have been suppressed because Rodriguez had no legitimate expectation of privacy with respect to the items he placed in the storage room. It was the Magistrate's privacy analysis that the Seventh Circuit rejected as insufficient, on the ground that a lack of privacy in the room does not imply a lack of separate privacy interest in the contents of each of the containers found in the room. *Id.* Because the Magistrate had made no findings with respect to Rodriguez's privacy in each of the containers, he also made no findings with respect to whether Mrs. Rodriguez had apparent authority and consented to search them. Thus, it was because of the lack of findings on the issue, as opposed to the sufficiency of the findings, that the Seventh Circuit remanded the case to us take further evidence and to make additional findings—specifically focusing first on whether Rodriguez had a privacy interest in each of the individual containers, and then as to whether Mrs. Rodriguez had apparent authority

and had given consent. Therefore, we believe it proper to consider the totality of the evidence concerning the circumstances of the search, gleaned both from the supplemental hearing and the prior proceedings.

■ Based on the totality of the evidence, we agree with the Magistrate's comments at the supplemental hearing that when the agents entered the janitor's storage room, having obtained Mrs. Rodriguez consent, they entered in her shoes so to speak. Having secured her consent to search the storage room, they had authority to look where Mrs. Rodriguez herself had apparent authority to look.

By virtue of being issued a key to the storage room, whether by her husband or by the Union, it has been conclusively determined that Mrs. Rodriguez had apparent authority to consent to entry of the room for a search. In addition, notwithstanding the fact she and Rodriguez were estranged, to the federal agents it would nevertheless have reasonably appeared that, as his wife, she also had common authority to look into his effects. There is credible testimony that at times she stood and looked into the room and saw the search being conducted. At no time after giving consent did she object to or limit the search in any way. Furthermore, prior to allowing entry into the janitor's room, Mrs. Rodriguez had consented to a search of her residence. There is evidence that during this search she had shown the agents where personal effects of Rodriguez were stored in the residence, which included boxes of clothing and a gun belonging to Rodriguez that Mrs. Rodriguez stated he had left there for her. Thus, from the agents' perspective, it

---

**1.** At the supplemental hearing the Magistrate stated

Now, with respect to the briefcase and the file box ... if I were writing on a clean slate, I would say that the agents, when the door was opened, walked in the room in the shoes of Mrs. Rodriguez ... and she would have had the authority, even though they were separated, to have looked in the box and the briefcase. And I don't believe that the defendant would have a reasonable expectation of privacy from her doing that. But I'm not writing on a clean slate. The Court of Appeals, Judge Easterbrook, stated that unless [new] testimony demonstrates that Mrs. Rodriguez had ap-

parent authority to consent to the opening of these containers—and he's referring specifically to the briefcase and file box—and did so, the evidence must be suppressed. There was no testimony that came in that she specifically consented to the opening of the briefcase and file box. Therefore, those items and the information in them should be suppressed. Trans. of Procs. January 19, 1990, at 42–43. *See Rodriguez,* 888 F.2d at 525 ("[U]nless new testimony demonstrates that Mrs. Rodriguez had apparent authority to consent to the opening of these containers, and did so, the evidence found in them must be suppressed.")

would not have been unreasonable to conclude that Mrs. Rodriguez's actions in the apartment demonstrated her authority to grant them access to her husband's personal effects.

On the question of her consent, what transpired in the apartment is further evidence that Mrs. Rodriguez was aware that the agents specifically wanted to search Rodriguez's personal effects. Given the nature of the search of the apartment, we find it unlikely that she did not understand the extent of the search that the agents wanted to and would conduct in the janitor's room in the event that she consented to their entry. Indeed, the testimony shows that Mrs. Rodriguez ultimately consented to the search of the room after she informed the agents that it was a place where her husband worked, sometimes slept, and stored some of his effects, and thus she knew that the agents were interested in searching the storage room because of what she told them. Her only expressed concern in hesitating to open the door to the storage area was that the Union might not like it; there was no indication that she was hesitant because she feared she lacked authority to grant them access to her husband's personal effects. By granting access to the room and her husband's effects, including his box and briefcase, she effectively consented to their search.

Although we are mindful that to say that Mrs. Rodriguez consented to a search of the janitor's room "is not necessarily to say that she consented to a search of the items it contained," *id.* at 523, under the circumstances here we find that her consent extended at least as far as allowing entry into the room and a search of her husband's personal effects, which from all appearances is something she herself possessed authority to do.

This is not to say that Mrs. Rodriguez possessed apparent authority to consent to the search of any items with another person's name emblazoned on them or of the closed boxes containing union records. Mrs. Rodriguez's position with respect to those items would in such an instance be identical to that of United Airlines in the analogy posed by Judge Easterbrook, in which he points out that although United may "consent to a search of its baggage handling facilities ... no one thinks that United could consent to a search of all luggage in its possession." [2] *Id.* at 523. However, surely the consent to search the baggage handling facility, absent express limitation to the contrary, would extend into all areas that the official granting consent would have had apparent authority to enter.[3]

Thus, it is not enough simply to argue, as Rodriguez does, that he possessed an additional privacy interest in the box and briefcase and therefore the evidence gained from them should be suppressed. By placing his name on the box and briefcase he may have adequately ensured a privacy interest in the items such that persons other than his wife would clearly not possess an apparent right of access. However, there is no evidence that suggests that the placement of his name on these items was further intended to bar access by his wife. For example, there is no evidence that the box or briefcase contained a lock, or even if they did that Rodriguez had kept them locked and possessed the only key. To the contrary, the briefcase was open at the top and the plastic box was not sealed in any way. Nor is there evidence that Rodriguez ever told his wife that the briefcase and box were off limits to her. *Cf., United States v. Sealey,* 830 F.2d 1028 (9th Cir. 1987) (wife told officers that she needed her husband's permission to go into the garage). Mrs. Rodriguez's apparent authority and consent overcomes the privacy

---

**2.** This situation most closely resembles the situation the agents might have faced had a union official, as opposed to Rodriguez's wife, consented to a search of the storage room. It is doubtful, absent some positive evidence to the contrary, that a union official would possess the apparent authority to go into Rodriguez's clearly marked personal effects.

**3.** As discussed below, however, evidence gained from boxes containing union materials is admissible because Rodriguez would have possessed no reasonable expectation of privacy in those boxes. Therefore, he is in no position to object to their search.

interest.[4] Therefore, we conclude that the evidence obtained from a search of the box and the briefcase should not be suppressed.

■ We now turn to the propriety of the search of the remaining containers. At the supplemental hearing Magistrate Balog found that Rodriguez did not possess any reasonable expectation of privacy in the contents of closed, unmarked boxes found in the storage area. January 19, 1990 Trans. of Procs. at 42. Nevertheless, in his Report and Recommendation, Magistrate Balog recommended that the evidence contained in the closed, unmarked boxes should be suppressed because the additional testimony did not show that "Mrs. Rodriguez had apparent authority to consent to the opening of these containers, and did so ..." As stated above, however, that showing pertained only to the question as to whether Mrs. Rodriguez had apparent authority and consented to the search only of the containers clearly marked with Rodriguez's name—i.e. those containers in which he possessed an additional and demonstrable privacy interest. If no reasonable expectation of privacy existed with respect to the unmarked boxes, then so long as the consent to be in the room conducting a search was valid (which the Seventh Circuit held it was), Rodriguez has no grounds to challenge the examination of the unmarked boxes. The boxes were not marked in any way to indicate Rodriguez's ownership, Mrs. Rodriguez did not object to the search of the boxes or disclaim an interest in them, and, even if some of them were sealed, the boxes "were not the type of 'enclosed spaces'—such as suitcases, strongboxes, footlockers, etc., commonly used to preserve privacy." *See United States v. Sealey*, 830 F.2d 1028, 1031 (9th Cir.1987). *Cf. Rodriguez*, 888 F.2d at 523–524, n. 2. Therefore, we conclude that Rodriguez's lack of a demonstrable privacy interest in these unmarked boxes deprives Rodriguez of any grounds to object to their search. Accordingly we deny the motion to suppress the evidence found in these boxes.

Finally, we adopt the Magistrate's recommendation that the motion to suppress should be denied as to evidence obtained from the boxes clearly marked with the "union address" or the "union records" on the outside. Here, it is even more evident that Rodriguez could have possessed no reasonable expectation of privacy as to the contents of those boxes.

### CONCLUSION

Pursuant to the Seventh Circuit's opinion, we vacate the conviction and order a new trial. We grant Rodriguez's motion to suppress the statements taken from him by the FBI agents following Rodriguez's initial appearance on February 5, 1988, because the statements were obtained in violation of Rodriguez's Sixth Amendment right to counsel. Based on our review of the entire record, including the additional proceedings, and having made the additional findings required of us by the Seventh Circuit on remand, we deny Rodriguez's motion to suppress the evidence found by the FBI in the various containers located in the basement storage room. A status hearing will be held on March 23, 1990, at 11:00 a.m. It is so ordered.

---

**4.** This is identical to the Seventh Circuit's holding that, although Rodriguez had "some privacy interest" in the locked janitor's room, thus barring the agents from making an unconsented warrantless entry, Rodriguez's privacy interest nevertheless was limited, in essence, to the extent that other persons legitimately had access to the room, and therefore could have consented to entry by the agents.