# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-1859

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS ALLMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 453-2—**Wayne R. Andersen,** *Judge.*

ARGUED FEBRUARY 20, 2003—DECIDED JULY 15, 2003

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant pleaded guilty to possessing a prohibited weapon (an M-16 rifle), and related crimes, and was sentenced to 144 months in prison, but in his plea reserved the right to appeal from the denial of his motion to suppress.

An employee in the postal service's Phoenix, Arizona airmail center noticed a package from which protruded an object that he recognized as the "pivot pin" of an M-16. An army veteran, he had become intimately acquainted with the M-16 during his military service. The pivot pin connects the lower to the upper part of the gun and is prominent

when the gun is disassembled. The employee squeezed the package and felt the outline of the lower part of the gun, to which the pin is attached. He noticed at about the same time a box with the same Chicago address and in the same handwriting. He notified a postal inspector in the airmail center who in turn called a postal inspector in Chicago and was directed to send the two parcels to Chicago. The inspector in Chicago who examined them when they arrived was also an army veteran and he thought that the box was too short to contain the upper part of the gun, the lower part being in the package. (It's as if one parcel had contained a headless body, and the other was too small to contain the head.) By this time he had learned that both Thomas Allman, who had mailed the two parcels and is the defendant in this case, and his brother Michael, the addressee, had histories of violent crimes and might have ties to right-wing organizations. Putting two and two together (although it is unclear that the sum he derived was four), he decided that the box might contain an explosive device of some sort, or ammunition, and so he x-rayed it and discovered that it contained the upper part of an M-16 after all. A warrant to search the two parcels was obtained and executed, confirming their contents. The warrant also authorized the insertion of a transmitter in them, which was done and led federal officers to Michael Allman's apartment. He too pleaded guilty to federal firearm violations, but his case is not before us.

The pivot pin was in plain view and created probable cause to believe that Thomas Allman was violating federal firearm laws. *Texas v. Brown*, 460 U.S. 730 (1983); *Arkansas v. Sanders*, 442 U.S. 753, 764 n. 13 (1979); *United States v. Eschweiler*, 745 F.2d 435, 440 (7th Cir. 1984); *State v. Youngblood*, 786 P.2d 551, 556 (Idaho 1990). The identical handwriting and address on the second parcel and the fact that the two parcels were traveling together created

probable cause to search the second parcel as well. We could stop right there. The defendant contends that the squeezing of the package from which the pin was protruding, and the x-raying of the box, violated the Fourth Amendment. Even if he is right, there was an ample basis for the search warrant that was issued and so, the evidence having been obtained lawfully by virtue of the warrant, the motion to suppress was properly denied.

We do not think a warrant was even necessary. Although the Supreme Court has held that feeling luggage to determine its contents is a search within the meaning of the Fourth Amendment, *Bond v. United States*, 529 U.S. 334 (2000), and although the general rule is that a search is unlawful without a search warrant, there are a number of exceptions. See, e.g., *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam) (automobile searches supported by probable cause); *United States v. Ramsey*, 431 U.S. 606, 616-18 (1977) (search at international border); *South Dakota v. Opperman*, 428 U.S. 364, 372-73 (1976) (inventory search of impounded car); *United States v. Robinson*, 414 U.S. 218, 224 (1973) (search incident to a lawful arrest); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (search after consent); *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (pat-down search for weapons based on reasonable suspicion). There ought also to be an exception for packages about to be placed on an airplane. See *United States v. Oriakhi*, 57 F.3d 1290, 1303 (4th Cir. 1995) (concurring opinion). When we consider that all persons, with all their belongings, who travel by air are subject to search without a warrant, see, e.g., *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 675 n. 3 (1989) (collecting and approving cases); *United States v. Edwards*, 498 F.2d 496, 498 n. 5, 500 (2d Cir. 1974) (Friendly, J.), we have trouble making sense of a rule that would forbid such a search if a parcel is traveling by itself, also by air, as part of a mail shipment.

Apropos is *United States v. Ramsey, supra,* 431 U.S. at 620, where the Supreme Court held that the warrantless search of envelopes mailed from Thailand and containing heroin was justified by the border-search exception to the warrant requirement. Had the defendants carried the envelopes on their persons there would have been no doubt that custom officials could search the envelopes when the defendants entered the country. The defendants were entitled to claim no greater right of privacy in the contents of the envelopes simply because they mailed rather than carried them. If anything, there is a stronger justification for searching parcels that are traveling alone on a plane than for searching those that are part of a passenger's baggage, since in the first case, if there is a bomb in the parcel set to explode during the flight, there is no personal risk to the bomber.

Regarding the second parcel, the box containing the rest of the gun, we do not accept the government's argument that opening the package in Chicago was justified by the rule that permits a search without a warrant if there is an emergency or other urgent need ("exigent circumstances"). Had the postal authorities feared that the box might contain an explosive device, they would hardly have flown it to Chicago without inspection, as they did; or when it arrived have x-rayed it rather than calling the bomb squad. Certainly, though, they had probable cause to believe that it contained contraband or evidence of crime, and the question is whether x-raying, though a form of search, *United States v. Montoya De Hernandez,* 473 U.S. 531, 541 n. 4 (1985); *Brent v. Ashley,* 247 F.3d 1294, 1303 (11th Cir. 2001); *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1447 (9th Cir. 1989); *United States v. Haynie,* 637 F.2d 227, 230 (4th Cir. 1980), requires a warrant when it is conducted on a parcel in transit. Airline passengers and their luggage are searched on embarking,

not arriving; and numerous cases hold that a parcel may not be opened by the authorities without a warrant even if there is probable cause to believe that it contains contraband or evidence of crime. *United States v. Place*, 462 U.S. 696, 701 (1983); *Walter v. United States*, 447 U.S. 649, 654-55 (1980); *United States v. Rodriguez*, 888 F.2d 519, 523 (7th Cir. 1989); *United States v. Bulacan*, 156 F.3d 963, 968 (9th Cir. 1998). But a prima facie case of violation of the Fourth Amendment requires that there be a "reasonable expectation" of privacy in the property searched, *Kyllo v. United States*, 533 U.S. 27, 33 (2001), and we have trouble seeing how, in this age of routine, soon to be universal, x-raying of containers shipped by air, the defendant could have had a reasonable expectation that his package would not be x-rayed at any point during transit. *United States v. Bronstein*, 521 F.2d 459, 462 (2d Cir. 1975); *United States v. Oriakhi*, *supra*, 57 F.3d at 1303 (concurring opinion). If anything, it was irresponsible of the postal authorities to ship the box to Chicago without first x-raying it, and we do not see why their lapse should give the defendant a constitutional claim. Whether a more intrusive search of the box than merely to x-ray it would have been permissible without a warrant we need not decide.

AFFIRMED.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*