**UNITED STATES, Appellee,**

v.

**David Michael LEJA, Defendant, Appellant.**

**No. 05–1764.**

United States Court of Appeals, First Circuit.

Heard March 8, 2006.

Decided May 23, 2006.

---

Curt Obront with whom McKenna & Obront was on brief for appellant.

Thomas J. O'Connor, Jr., Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, and Karen L. Goodwin, Assistant United States Attorney, were on brief for appellee.

Before HOWARD, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

CAMPBELL, Senior Circuit Judge.

Defendant-appellant David Michael Leja appeals from his conviction for health care fraud, mail fraud, and obstruction of justice in the United States District Court for the District of Massachusetts. He contends that his Sixth Amendment constitutional right to a jury trial was violated because his purported waiver of his right to a jury trial was legally insufficient. While the jury waiver should have included Leja's signature, we have carefully examined the record and are satisfied that Leja waived his right to a jury trial and that his waiver was knowing, voluntary, and intelligent.

## Background and Facts

On July 15, 2004, a grand jury indicted Leja in a 57–count superceding indictment with 46 counts of mail fraud, in violation of 18 U.S.C. § 1341; nine counts of making material false statements in connection with the payment of health care benefits, in violation of 18 U.S.C. § 1035; one count of obstructing justice, in violation of 18 U.S.C. § 1043; and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(1). Leja's attorney purported to waive a jury trial on his behalf (the validity of that waiver is the issue on appeal here), and, after a three-week bench trial, Leja was convicted on December 15, 2004 of 40 counts of mail fraud, nine counts of making false statements, and obstruction of justice. The court found Leja not guilty of witness tampering. On May 5, 2005, the court, departing downward from a Guideline Sentencing Range of 41 to 51 months, sentenced Leja to 30 months' imprisonment to be followed by three years' supervised release, a $15,000 fine, and a $5,000 special assessment. Leja filed a timely appeal, and in that appeal he now argues that he never adequately waived his right to a jury trial.

Prior to his bench trial, Leja and the government, on September 10, 2004, filed a document entitled a Joint Notice Re: Jury Waiver, informing the district court that the parties had agreed to waive a jury and have the case heard by the court. The waiver was filed electronically and contained the electronic signatures of both the attorney for the government and Leja's counsel, who had authorized the government to include her electronic signature on the waiver on behalf of Leja.

The above waiver was submitted approximately seven weeks after the district court had discussed with Leja's counsel, in Leja's presence, the possibility that Leja might wish to waive a jury. The discussion took place on July 16, 2004, at a hearing the court held on Leja's motion to continue the trial date so that he could secure expert testimony regarding the loss stemming from his alleged fraud. Leja and the court both took the position that the government had to prove the loss amounts associated with any specific offense enhancement beyond a reasonable doubt. During the hearing, the court spoke of the complexities of the parties' competing theories of financial loss and the possible difficulties the parties might have in educating a potentially unsophisticated jury on those matters. In light of the complexities, the court suggested that the parties consider whether they wanted to waive the jury. In suggesting this approach, the court emphasized that it was not pressuring either party to waive a jury and noted that it was reluctant to take on the role of rendering the verdict:

> I have two questions—one question and one suggestion. The question is how long is it going to take to put the evidence on in this case and put the defense on in this case? What was the estimate?
>
> And, two, have you thought of waiving jury in this case? Is there any consideration of waiving jury in this case because of course I'm going to do everything I can to instruct the jury properly. But I can tell you of the fourteen people, the twelve jurors and two alternates, that will be sitting on that jury, we'll be lucky to have two people who have any college. That's my expectation with regard to the jury. Or we'll probably be lucky to have two people who graduated from a four-year college, maybe one, and maybe we will have two or three people who have

associate's degrees or RNs or something of that nature.

> So you guys are going to have your hands full trying to educate the jury about the concept that we have been discussing for the last half hour or 40 minutes. And I'm not interested—I'm not pushing anybody. I'm not interested in having to take responsibility for this case, but I'm just wondering whether this might not be the sort of case that would be tried from both sides' points of view a lot more comfortably to the court rather than a jury.
>
> I don't even know if it is proper for me to suggest that and I certainly don't want to appear in any way to be pressuring anybody. I love juries. I like jury trials. That's what I do all day. It saves me having to deal with the moral pressure of actually having to make the call in a situation where somebody's liberty might be at stake. So that's not something that I have a huge appetite to take on where it's not necessary, but I think that that's something you might really want to consider in a case that's so technical.

Towards the end of the hearing, the court reiterated its request that the parties consider the possibility of jury waiver:

> I'm going to urge both of you—I hope I'm not committing reversible error by even doing this, but I guess I will say it seems to me that this is a situation where you at least should give careful consideration to the possibility of waiving jury and trying the case to the court. I'll let you each think about that and talk to each other about it and see if there's something you will be willing to do, and there we are.

\* \* \*

> In any event, so I would urge you to think about that. I don't have any rel-

ish for it because it does make my work harder but I think it's something to consider.

The court then told the parties that the case would be heard by a jury absent some action by the parties:

... we're going to start the trial on October 18. But unless there's a thermonuclear attack targeted at Springfield specifically, we will be picking the jury on October 18 and that's when we will get started.

At the conclusion of the July 16, 2004 hearing, the district court ordered the parties to report on whether they wished to try the case without a jury, stating:

Let me put it this way. I don't want to appear to be pressuring either the defendant or the government. To the extent that you wish to waive jury, you will tell me so by September 10.

As noted, Leja was present in the courtroom throughout the above hearing. On July 22, 2004, the court issued an order, in which it required the parties to "report to the court, in writing, by September 10, 2004, as to whether they will be waiving jury in this highly complex case." On September 10, 2004, the parties filed the written waiver document Leja now challenges.

During a hearing on September 30, 2004, the court confirmed on the record the filing of the parties' September 10 written jury waiver:

THE COURT: The case has been considerably simplified, at least I think, by agreement of both parties to waive jury in this case. Do I have that correct?

MS. QUIGLEY: Yes

[Defense counsel]

THE COURT: Both of you are nodding.

MS. GOODWIN: Yes.

[Prosecution]

Leja was again present in the courtroom during this exchange and offered no objection.

On October 18, 2004, the beginning of the trial, the district court, at the request of the government, again inquired of defense counsel whether Leja intended to waive jury:

MS. GOODWIN: Just one more housekeeping matter. I had filed on behalf of the defendant and myself that waiver of jury. I filed it electronically. It was not actually signed by defense counsel, and the defendant himself has not signed anything waiving his right to a jury. I thought it might be appropriate to put on the record here that there is a waiver of jury certainly from the government's perspective but also from the defendant.

THE COURT: Well, let me make that clear on the record so that there isn't any confusion on that point at all. We're here without jury following a waiver by both sides of jury trial. You've just confirmed that Ms. Goodwin from the government's point of view. Ms. Quigley, do you also confirm that?

MS. QUIGLEY: Yes, your Honor.

THE COURT: And you've discussed that with Mr. Leja and he agrees with that?

MS. QUIGLEY: Yes, he does.

THE COURT: For the record, Mr. Leja is here and is not indicating any disagreement....

The trial proceeded without a jury and lasted about three weeks. The evidence at trial established that Leja had engineered a complex and sophisticated fraud followed by an elaborate cover-up and scheme to obstruct justice. Leja graduated from Boston College. He was a licensed insurance and securities broker with a great

deal of experience in insurance and other fields. He used his expertise to deceive clients, other brokers, and insurance companies bidding on his business. When the scheme began to unravel, Leja gave false explanations and fabricated documents in order to deflect blame from himself.

Leja testified in his own defense at trial. The court found his explanation to "lack credibility entirely on practically every crucial point of evidence." At trial, Leja denied sending out the forged documents, but, the court noted, the cover letters associated with those documents often referred to conversations with Leja or invited a response, making the defendant's testimony "almost ridiculous and certainly incredible." Similarly, the court found that the defendant's testimony that he was absent from the office during critical time periods was "simply not believable [and] wholly unsupported by the record."

Testimony in the case concluded on November 4, 2004. The court then gave the parties three weeks to submit written closing arguments to be followed by oral argument in December, 2004. At the conclusion of oral argument, the court convicted Leja, finding, among other things, that he "carried out his scheme to defraud with extraordinarily elaborate planning and resourcefulness."

On February 9, 2005, Leja filed a motion for a new trial, claiming, among other things, that his jury waiver was invalid because he had not personally signed it and the court had not conducted an in-depth colloquy with him on the subject. On March 4, 2005, the district court denied the motion, finding that Leja's jury waiver was knowing, intelligent, and voluntary. As a basis for its ruling, the district court noted that Leja was "intelligent and articulate" and that he was present throughout his trial and was "clearly attentive and engaged." The district court also noted that "counsel referred to the defendant's own notes taken during trial as support for her arguments and conferred with him virtually every time before completing direct or cross examination of a witness."

The district court recalled having a clear memory of turning to Leja at the start of the trial on October 18, 2004 and confirming with him that he did not disagree with his attorney's representation that he had decided to waive jury after discussing the matter with counsel. The court noted that although Leja did not provide an audible reply, his "facial expression confirmed [his] assent to his lawyer's representation" and that "the court received no reaction by the defendant that would have indicated his disagreement or lack of understanding regarding the waiver." The court also noted that at no time during the trial did Leja express "the slightest discomfort or hesitation in proceeding without a jury." Although it recognized that "the receipt of a written waiver signed by the defendant himself is obviously the better practice," the district court observed that "no other conclusion can be drawn but that the defendant had a full opportunity to confer with his counsel, did in fact confer, and made a knowing, intelligent, and affirmative decision to waive his right to a jury trial."

### Discussion

On appeal, Leja argues that his jury waiver was not valid because, he claims, the law requires both that he personally sign the waiver and that the district court ask him questions concerning his understanding of his jury trial right and the ramifications of his waiver. The government argues that the case law has no such stringent requirements and that a reversal is not warranted where the record establishes that the defendant's waiver was

knowing, voluntary, and intelligent, which the government argues it was here.

## A. Standard of Review

 We review the denial of a motion for a new trial for abuse of discretion. *United States v. Gonzalez–Gonzalez,* 258 F.3d 16, 20 (1st Cir.2001). The district court's resolution of legal questions, however, is reviewed de novo. *Id.* The interpretation of a rule of criminal procedure is such a legal question. *See, e.g., United States v. Encarnacion,* 239 F.3d 395, 397 (1st Cir.2001) ("We review de novo the district court's construction of the Federal Rules of Criminal Procedure."). Likewise, "the question of whether there has been a denial of the right to a jury trial is a legal question requiring de novo review." *United States v. Robertson,* 45 F.3d 1423, 1430 (10th Cir.1995).

## B. Procedural Default

As a preliminary matter, the government argues that the defendant procedurally defaulted on his Sixth Amendment claim by not raising it prior to the commencement of trial and thus that this court should review the denial of the motion for new trial for harmless error. The government claims that where Leja gave his (admittedly nonverbal) assent to the jury waiver, he was not entitled subsequently to raise the issue because he had himself invited the error. *See United States v. Page,* 661 F.2d 1080, 1083 (5th Cir.1981) ("A defendant cannot complain on appeal of alleged errors invited or induced by himself, particularly where, as here, it is not clear that the defendant was prejudiced thereby." (citation omitted)). *Page* differs somewhat from the instant case, however, in that in *Page,* the defendant himself first suggested waiving a jury, whereas here the district court initiated the idea. Leja argues that the Sixth Amendment right to a jury trial is too fundamental to be dismissed on procedural grounds, relying on *United States v. Proctor,* 166 F.3d 396, 401 (1st Cir.1999), where we refused to review for abuse of discretion a claim regarding appointment of counsel because of confusion over what went on at the hearing in question. Given the significance of the constitutional right at issue here and its relationship to the inquiry of how the district court handled the issue of waiver, we will conduct a plenary review.

## C. The Waiver

 A criminal defendant has the fundamental right to a jury trial under the Sixth Amendment to the Constitution. *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). A defendant, however, may waive that constitutional right. *Adams v. United States ex rel. McCann,* 317 U.S. 269, 277–78, 63 S.Ct. 236, 87 L.Ed. 268 (1942) (citing *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930)) (abrogated on other grounds by *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970)); *United States v. Sys. Architects, Inc.,* 757 F.2d 373, 375 (1st Cir.1985). "Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant." *Patton,* 281 U.S. at 312, 50 S.Ct. 253. Federal Rule of Criminal Procedure 23(a) states that a defendant is entitled to a trial by jury unless "(1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves."

■ Leja argues that the waiver is invalid because he did not personally sign it (instead, Leja's counsel's electronic signature was attached to the waiver document by government counsel, with the former's authorization). Leja observes that the Bench Book for U.S. District Court Judges states that a written waiver of jury trial must be signed by the defendant. Federal Judicial Center, Fourth Edition, with March 2000 revisions (1996). Though the Bench Book merely provides guidance for district judges and is not legally binding, the district court here wrote that "[w]hile [Rule 23(a) ] is silent as to whether the written waiver must be signed by the defendant personally, the receipt of a written waiver signed by the defendant himself is obviously the better practice, and one which the court will not overlook in the future. For purposes of this motion the court will assume that its failure to obtain a written waiver *personally* signed by the defendant constituted a violation of the strict requirements of Rule 23" (emphasis in original). We agree entirely with the district court that, where otherwise possible, the correct practice is to secure a written waiver signed personally by the defendant. The district court should have seen that that practice was followed here. The question remains, however, whether the failure to observe that practice, in the circumstances of this case, amounted to a violation of the Sixth Amendment or otherwise to reversible error. We find that it does not.

The government argues that Leja's waiver of the jury was made knowingly, voluntarily, and intelligently despite the absence of a personally signed waiver. The First Circuit has not previously addressed this issue directly. The Ninth and Tenth Circuits have stated that oral waivers of jury trial can be valid, provided there are circumstances ascertainable from the record demonstrating that the waiver was made knowingly, voluntarily and intelligently. *See United States v. Saadya,* 750 F.2d 1419, 1420 (9th Cir.1985) (an exception to the writing requirement of Rule 23(a) exists "where the record clearly reflects that the defendant personally gave express consent in open court, intelligently and knowingly"); *Robertson,* 45 F.3d at 1431 (holding that "strict compliance" with Rule 23(a) is not always required: "In those circumstances where the record clearly reflects a defendant's waiver of the right is voluntary, knowing, and intelligent, we see no practical reason for finding a waiver invalid simply because Rule 23(a)'s writing requirement has not been met.").

■ Leja argues that the record lacks any evidence that he knowingly waived his right to a jury trial and focuses part of his argument on the fact that, besides the lack of his signature, there was no colloquy between the court and the defendant regarding the waiver. This court has held that Rule 23(a) makes "no reference ... to oral inquiries." *Sys. Architects,* 757 F.2d at 375. In circuits that have suggested that district courts conduct colloquies as a matter of prudence, the absence of colloquy by itself does not require reversal where the evidence establishes that the defendant's waiver was knowingly and intelligently made. *See, e.g., United States v. Rodriguez,* 888 F.2d 519, 527 (7th Cir.1989) (although the Seventh Circuit had previously adopted a supervisory rule requiring colloquies in *United States v. Delgado,* 635 F.2d 889, 890 (7th Cir.1981), *Rodriguez* recognized that courts may not reverse a conviction unless the purported error affected the defendant's substantial rights). In making this determination, courts may consider a variety of factors showing that a waiver is validly given. Courts have considered representations by defense counsel concerning the waiver. *See United States v. Robin-*

*son*, 8 F.3d 418, 423 (7th Cir.1993) (court could find valid waiver if defense attorney had told court that it was his client who had decided to waive the jury); *Page*, 661 F.2d at 1082–83 (waiver valid where it was communicated by defense counsel to the court in chambers and later reaffirmed by the attorney on the record in defendant's presence). Courts may also take into consideration a defendant's presence in the courtroom at times when waiver was discussed. *See Rodriguez*, 888 F.2d at 528 (venire in courtroom when defendant waived jury); *Page*, 661 F.2d at 1082 (judge said in defendant's presence that he understood defendant to be waiving right to jury). Finally, courts may take into account the extent of the particular defendant's ability to understand courtroom discussions regarding jury waiver. *See Sys. Architects*, 757 F.2d at 375 (where we considered that the defendants "were a corporation dealing in sophisticated, state-of-the-art computer systems, and its well-educated owner and managers" in rejecting the claim that their written jury waivers and colloquies were inadequate); *United States v. Bishop*, 291 F.3d 1100, 1114 (9th Cir.2002) (court rejected defendant's claim that a colloquy was required, noting the defendant was a "sophisticated business proprietor"); *United States v. Anderson*, 704 F.2d 117, 119 (3d Cir.1983) (where court rejected claim that waiver was not knowing and intelligent, where the defendant was employed as a bookkeeper, had three years of college education, and was found by the district court to be an intelligent, alert, and perceptive woman); *Page*, 661 F.2d at 1082 (rejecting claim

that waiver was invalid in part because the defendant was a "highly educated and articulate man," who must have understood his lawyer's waiver and demonstrated no objection or surprise when the waiver was made).

■ In the instant case, we believe that the record reflects that Leja's waiver was knowingly, voluntarily, and intelligently given. Leja is a college graduate and involved himself actively in his defense. He was present during the hearing on July 16, 2004 when the district court's comments made it clear that a trial by jury would take place unless the parties entered a waiver, that waiver was a serious decision to be considered carefully, that it was up to the parties whether to waive or to demand a jury, that the court was not pressuring the parties to waive the jury and indeed that the court did not enjoy the idea of rendering the verdict itself. The court told the parties that it would pick the jury on October 18 unless they filed a waiver. The waiver document, bearing Leja's counsel's authorized electronic signature, was filed on September 10. The court confirmed the filing of the waiver in Leja's presence on September 30.[1] Leja was again present in court on October 18, when, at the start of his trial, the court reiterated on the record the parties' intention to waive a jury, and his lawyer confirmed in open court that the parties had waived a jury and that she had discussed the matter with Leja and he had agreed to the waiver. Leja not only did not then object, but, according to the district court,

---

**1.** While the district court specifically stated in its memorandum and order that Leja was present during the September 30 pretrial hearing, Leja argues that nothing in the transcript confirms his presence in the courtroom; the court is not shown in the transcript to have spoken to Leja, nor is his presence otherwise noted therein. However, we re-

view the record in the light most favorable to the nonmoving party when reviewing, as here, a motion for a new trial. *Stuart v. United States*, 337 F.3d 31, 37 (1st Cir.2003). Nothing in the transcript conflicts with the court's later observation that Leja was present. Under the circumstances, we credit the court's statement that he was present.

Leja demonstrated his agreement with these confirmations through his facial expressions. Through his presence during the discussions of waiver, his conduct, including facial expression indicating his agreement with the waiver, his education, and his active participation in his own defense, Leja demonstrated that the waiver of jury trial, executed and reiterated in his presence by his counsel, was knowing, voluntary, and intelligent.

The government emphasizes the parallels between the instant case and that of *Page*, in which the Fifth Circuit upheld a jury waiver where (1) the defendant's counsel told the trial court, in a chambers conference out of the defendant's presence, that he and his client waived a jury; (2) after the chambers conference, the trial court said in the defendant's presence that he understood the defendant wished to waive jury, and defense counsel, but not the defendant, responded affirmatively; (3) the defendant did not object or express any surprise when the district court accepted the waiver; and (4) the defendant was "a learned, articulate man suffering neither language nor perceptive difficulty." Leja emphasizes that two crucial distinctions between his case and *Page* are that in *Page*, defendant's counsel raised the issue of jury waiver, whereas here, the court raised it, and that in *Page*, defense counsel told the court that he had conferred with his client at length and made a "considered, tactical decision" to waive a jury. The Fifth Circuit focused on the fact that it could rely on an attorney's representations about attorney-client conversations, not that the record should reveal the existence of in-depth discussions. Here, Leja's counsel represented that Leja wanted a bench trial, and Leja's conduct reflected no objection and, in fact, according to the district court, demonstrated his assent through his facial expression.

Leja relies on the Tenth Circuit's *Robertson* decision, in which the court found a jury waiver invalid when the record was silent regarding the defendant's knowing, voluntary, and intelligent waiver of a jury trial and "no discussion was ever held in the presence of [the defendant] regarding her decision to waive the right to trial by jury." 45 F.3d at 1433. Here, however, the court discussed the jury waiver issue at length at the July hearing and again on two other occasions, all in the presence of Leja.

■ As a supplemental argument on the waiver issue, Leja argues that the district court improperly urged him to waive his right to a jury, relying on *United States v. Collamore*, 868 F.2d 24, 28 (1st Cir.1989) (abrogated on other grounds by *United States v. Tavares*, 21 F.3d 1 (1st Cir.1994)) for the proposition that a district court may not tamper with a party's decision to have a case tried to a jury. *Collamore*, however, is only tangentially apposite; it did not deal with jury waiver but rather with the district court's bifurcation order in a felon-in-possession of a firearm prosecution. At any rate, the record here does not suggest that the district court coerced or sought to coerce Leja to forego his right to be tried by a jury. The district court certainly made clear its belief that a jury might have difficulty with the complexity of the case, but nothing indicates that it conveyed the suggestion that a failure to waive might be viewed adversely by the court. To the contrary, it told the parties, "I'm not pushing anybody." It stated that it did not particularly relish the obligation of having to render the verdict. The court then gave the parties ample time—almost two months—to reflect on the waiver issue; it did not force an immediate decision on the subject. The court's emphasis that, absent defendant's waiver, the trial would be before a jury,

and its express reluctance to assume a fact-finding role, was consistent with the presumption in favor of a jury trial unless the parties themselves decided otherwise.

There is no doubt, of course, as the district court itself correctly stated later, that the procedure of the offer and acceptance of jury waiver could and should have been handled differently. Defendant's signing of the written waiver was a pro forma step that should have taken place so as to ensure and reinforce the voluntariness of the waiver. And where this did not occur, had the court in open court spoken directly to the defendant himself on the record, rather than just with counsel, this would have reinforced the judge's subsequent observations that the defendant had assented to his counsel's waiver of a jury trial. But in all the circumstances noted above, we are satisfied that defendant knowingly, voluntarily, and intelligently waived his right to a jury trial and that the errors committed do not warrant reversal of the conviction.

*Affirmed.*