Filed 11/17/21  Conservatorship and Estate of Luke C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION SEVEN

| | |
|---|---|
| Conservatorship of the Person and Estate of LUKE C. | B311111 |
| PUBLIC GUARDIAN OF THE COUNTY OF LOS ANGELES, as Conservator, etc., | (Los Angeles County Super. Ct. No. ZE028129 |
| Petitioner and Respondent, | |
| v. | |
| LUKE C., | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa Jaskol, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Objector and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Lauren Black, Assistant County Counsel, and William C. Sias, Principal Deputy County Counsel, for Petitioner and Respondent.

# INTRODUCTION

Luke C. appeals from the trial court's order appointing Public Guardian of Los Angeles the conservator of Luke's person and estate pursuant to the Lanterman-Petris-Short (LPS) Act. (See Welf. & Inst. Code, § 5350 et seq.) Luke argues the trial court improperly coerced him to waive his right to a jury trial by telling him he could have either a court trial that day or, because of the COVID-19 pandemic, a jury trial in eight months. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The LPS Act*

"The LPS Act authorizes the superior court to establish a conservatorship of a person who is gravely disabled as a result of a mental disorder." (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 139; see Welf. & Inst. Code, § 5350.)[1] "An LPS conservatorship automatically terminates after one year, and reappointment of the conservator must be sought by petition." (*Conservatorship of John L.*, at p. 143; see § 5361.) "The proposed conservatee is entitled to demand a jury trial on the issue of his or her grave disability," including on a petition "to reestablish a conservatorship after its automatic expiration . . . ." (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 541-542; see § 5350, subd. (d)(1), (3).)

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

B. *Public Guardian Files a Petition for an Order Reappointing It Conservator of Luke's Person and Estate*

In 2004 the superior court found Luke was gravely disabled and appointed Public Guardian as conservator of Luke's person. In February 2005 the court also appointed Public Guardian as conservator of Luke's estate. Between 2005 and 2019 the superior court annually granted petitions by Public Guardian to be reappointed.

Public Guardian filed the petition for reappointment that is the subject of this appeal in July 2020. At the time, the conservatorship was scheduled to terminate on September 6, 2020. On August 12, 2020 the court held a hearing, during which counsel for Luke asked the court to appoint an expert witness under Evidence Code section 730 to evaluate whether Luke had a grave disability. The trial court granted the request and, with the stipulation of Luke's counsel, ordered the conservatorship to remain in effect. In September and October 2020, the trial court granted requests by counsel for Luke to continue the trial on the petition, again ordering that the conservatorship remain in effect. At a November 16, 2020 hearing, at which Luke did not appear, counsel for Luke asked the court to set the matter for a court trial, "presumably with a waiver done that day . . . ." The court set the petition for trial on January 11, 2021, again ordering the conservatorship to remain in effect.

C. *Luke Waives His Right to a Jury Trial*

Luke appeared via video conference at the January 11, 2021 trial. At the beginning of the proceeding, the following exchange occurred:

3

"The Court:  Okay, so there are two kinds of trials that you can have.  One kind is called a court trial, and in a court trial, the judge hears all the evidence and then the judge makes a decision whether the evidence shows beyond a reasonable doubt that you're gravely disabled.  So that's a court trial.  The other kind of trial is called a jury trial.  In a jury trial, 12 people from the community come to court, and those 12 people hear all the evidence and then they decide if the evidence shows beyond a reasonable doubt that you're gravely disabled.  In order to find that you're gravely disabled, all 12 jurors have to reach that decision.  So you have a choice:  Either you can have a court trial with a judge, or you could have a jury trial with the 12 people from the community.

"Luke:  Whatever gets me off conservatorship fastest.  Couple names of some places I can go to.  I wrote them down.

"The Court:  Well, so first things first.  Do you want to have a court trial with the judge or a jury trial with the 12 members of the community?  And if we do—just so you know, if we have a court trial, we can do it today and we can do it right now.  If we have a jury trial, it will probably be about eight months from now.  So do you know—

"Luke:  Your time, Your Honor.

"The Court:  Don't worry about me.  It's really what you want.

"Luke:  Yeah.  I told her yeah.  I was telling her about that right now.  Anyway, judge trial please.

"The Court:  Okay, thank you.  So you're giving up your right to a jury trial?

"Luke:  Yes, ma'am."

4

D.    *The Court Grants the Petition*

The court trial commenced shortly after Luke waived his right to a jury trial. Dr. Gary Freedman-Harvey, a forensic psychologist, testified for Public Guardian and said that, in his opinion, Luke was gravely disabled. Dr. Freedman-Harvey reviewed Luke's medical records, consulted with staff at Luke's treatment facility, and interviewed Luke. According to Dr. Freedman-Harvey, Luke suffered from schizophrenia and had no insight into his disorder. His symptoms included "delusional and perfunctory thought processes" and a "limited amount of ability to engage in reasoning or thoughts about his current situation . . . ." Dr. Freedman-Harvey stated that, if the court terminated the conservatorship and Luke left his treatment facility, Luke would not be able to feed, shelter, and clothe himself, nor would he take the medications prescribed for his disorder. Dr. Freedman-Harvey also observed that Luke did not have a viable plan for finding a place to live.

Luke testified that, in his opinion, he suffered from "just anxiety mainly" and that he might be bipolar, but that he did not suffer from schizophrenia. Luke stated that, if he were released from his treatment facility, he would continue to seek mental health treatment and take his prescribed medications.

The court found Luke was gravely disabled, granted the petition, and reappointed Public Guardian as conservator of Luke's person and estate. Luke timely appealed.[2]

---

[2]    Although an order granting a letter of conservatorship under the LPS Act is an appealable order (see § 5350; Prob. Code, § 1301, subd. (a); *Conservatorship of D.C.* (2019) 39 Cal.App.5th 487, 493), the conservatorship that is the subject of this appeal

5

expired on September 6, 2021, technically mooting this appeal. But "[b]ecause a conservatorship is relatively brief (one year) in comparison with the appellate process," we will hear this appeal as one raising an issue that "is one capable of recurring, yet of evading review because of mootness." (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1011, fn. 5; see *Conservatorship of K.P.* (2019) 39 Cal.App.5th 254, 257, fn. 2 [although the LPS Act conservatorship from which the conservatee appealed had terminated and the appeal was "technically moot," the court reached the issue of reappointment as "one that is '"capable of recurring, yet of evading review"'"], affd. (2021) 11 Cal.5th 695; *Conservatorship of G.H.* (2014) 227 Cal.App.4th 1435, 1439-1440 ['"Because procedures for reestablishment of conservatorships [under the LPS Act] "are of great public interest" and a reestablishment issue "could perpetually evade appellate scrutiny" [citation], we exercise our discretion to consider, and address the merits of, this appeal.'"]; *Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 960 ["because the issue presented by his appeal is capable of recurring, but evading review, and involves a matter of general public interest, we . . . exercise our discretion to address the merits of [an LPS Act conservatee's] appeal, in which he contends he was erroneously denied the right to a jury trial"]; *Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 161, fn. 2 [mootness argument in one-year conservatorship appeals is "uniformly rejected"].) On July 26, 2021 Public Guardian filed a petition for reappointment, and on August 30, 2021 the court granted the petition and reappointed Public Guardian as conservator. We take judicial notice under Evidence Code sections 452, subdivision (d), and 459 of the court's August 30, 2021 minute order.

6

# DISCUSSION

## A.  *Applicable Law and Standard of Review*

As stated, on a petition to reappoint a conservator under the LPS Act, a conservatee has the right to a jury trial on the issue of whether he is gravely disabled.  (*Conservatorship of Ben C.*, *supra*, 40 Cal.4th at pp. 541-542; see § 5350, subd. (d)(1), (3).)  According to Luke, the trial court coerced him to waive his right to a jury trial by telling him on the day of trial he could have a court trial that day or a jury trial in eight months.

The parties disagree on the applicable standard of review. Luke argues the same standards that govern whether a trial court has coerced a criminal defendant to waive his or her right to a jury trial govern whether a trial court has coerced a proposed conservatee in an LPS proceedings to waive his or her right to a jury trial.  Public Guardian argues the standards that govern jury trial waivers in civil actions, not criminal actions, govern jury trial waivers in LPS proceedings.  But Public Guardian does not explain whether there is any meaningful difference between civil and criminal proceedings when a party contends the trial court coerced a jury waiver, or what the difference is.  Because we do not need to resolve this issue to decide the appeal, we assume without deciding that standards in a criminal proceeding govern whether a trial court has coerced a waiver in an LPS proceeding.

In criminal proceedings, "'a defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, ""made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,"'" as well as voluntary ""in the sense that it was the product of a free and deliberate choice rather than

7

intimidation, coercion, or deception.' " ' " (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166; see *People v. Collins* (2001) 26 Cal.4th 297, 305 (*Collins*).)  The requirement that the defendant's waiver be voluntary prohibits the state, "whether its source is executive, legislative, or judicial in nature," from coercing a defendant to waive his or her right to a jury trial.  (*Collins*, at p. 306; see *People v. Dixon* (2007) 153 Cal.App.4th 985, 990 (*Dixon*).)  As the Supreme Court stated in *Collins*, this prohibition is based on the principle that "the state may not punish a defendant for the exercise of a constitutional right, or promise leniency to a defendant for refraining from the exercise of that right."  (*Collins*, at pp. 305-306; accord, *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413; *Dixon*, at p. 990.)  "The line of decisions prohibiting such coercion condemns 'the State's *unilateral* imposition of a penalty upon a defendant who had chosen to exercise a legal right,' and recognizes that '[t]o punish a person *because* he has done what the law plainly allows him to do is a due process violation of the most basic sort [citation], and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." ' "  (*Collins*, at p. 306; see *Dixon*, at p. 990.)  Courts examine the totality of the circumstances to determine whether a defendant has voluntarily waived his or her jury trial right.  (See *People v. Daniels* (2017) 3 Cal.5th 961, 991 (lead opn. of Cuéllar, J.) ["We uphold the validity of a jury waiver " 'if the record *affirmatively* shows that it is voluntary and intelligent under the totality of the circumstances.' "]; *People v. Sivongxxay*, at p. 167 [considering the totality of circumstances in "determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial"]; *People*

8

*v. Roles* (2020) 44 Cal.App.5th 935, 950 ["The test of a valid [jury trial] waiver turns on whether the record affirmatively shows that the waiver is voluntary and intelligent under the totality of the circumstances."].)

B.     *The Trial Court Did Not Coerce Luke To Waive His Right to a Jury Trial*

The case on which Luke primarily if not exclusively relies, *Collins*, *supra*, 26 Cal.4th 297, does not support his position. In *Collins* the trial court advised the defendant that the court had previously told the defendant's attorney "'there might well be a benefit'" to waiving the defendant's right to a jury trial "because 'just by having waived jury' and thus not taking two weeks' time to try the case, 'that has some effect on the court.'" (*Id.* at p. 309.) The trial court in that case told the defendant, immediately before the defendant waived his right to a jury trial: "'I'm not specifying that there's any particular benefit, but that by waiving jury, you are getting some benefit, but I can't tell you what that is because I don't know yet.'" (*Id.* at p. 302.) The Supreme Court concluded that the "form of the trial court's negotiation with defendant presented a 'substantial danger of unintentional coercion'" and that, "[i]n effect, the trial court offered to reward defendant for refraining from the exercise of a constitutional right." (*Id.* at p. 309.) The Supreme Court held the "inducement . . . violated defendant's right to due process of law" (*id.* at p. 309) and "rendered that waiver involuntary" (*id.* at p. 312).

The trial court here did not negotiate with Luke or offer to reward him for waiving his right to a jury trial. The trial court first described for Luke the difference between a court trial and a jury trial and stated, "You have a choice." When Luke indicated

9

he wanted whichever trial would end his conservatorship quicker, the court informed Luke about the court's availability to have a court trial or jury trial. The court said that it was available to begin a court trial that day, but that it would not be able to have a jury trial until several months later—in large part because of the effects of the COVID-19 pandemic on the court's operations. Luke does not dispute the accuracy of the court's description of the delays in setting jury trials because of the pandemic, and the parties agree it was the pandemic that caused the delay here. Finally, the court emphasized it was not trying to influence Luke's decision about whether to waive his right to a jury trial: Immediately after Luke stated, "Your time, Your Honor," the court said to Luke, "Don't worry about me. It's really what you want." The trial court's statements adequately conveyed to Luke that the court would neither punish nor reward him for his decision. (See *U.S. v. Leja* (1st Cir. 2006) 448 F.3d 86, 95 [district court did not coerce the defendant to waive his right to a jury trial, even though the court suggested a court trial, where the court stated, "I'm not pushing anybody"].)

Luke emphasizes that he received a benefit from waiving his right to a jury trial and having a court trial instead—namely, the benefit of having his case decided immediately, rather than waiting eight months (while still under a conservatorship). Luke is partially correct; he did receive a "benefit." But the court did not offer him a "reward" for waiving his jury trial right. As the Supreme Court stated in *Collins*, the rule prohibiting a trial court from coercing a defendant to waive his or her right to jury trial is based on the principle that the state may not punish or impose a penalty on a defendant who elects to exercise his rights and, conversely, may not promise leniency to a defendant who gives up

10

his or her rights.  (See *Collins*, *supra*, 26 Cal.4th at p. 306.)  For example, had the court arbitrarily threatened to delay setting a jury trial to induce Luke to waive his rights, the result may have been different.  But the trial court did not threaten to punish Luke or offer him reward; the court only informed him about the realities of delays in jury trials during the pandemic.  That Luke would receive a benefit from a court trial—earlier resolution of the petition—was not within the power of the court to control.  Thus, the court's statements did not implicate a reward or punishment and were not coercive.  (See *U.S. v. Leja*, *supra*, 448 F.3d at p. 95 [trial court's statement, that "a jury might have difficulty with the complexity of the case," did not coerce the defendant to waive his right to a jury trial where "nothing indicate[d] that [the court] conveyed the suggestion that a failure to waive might be viewed adversely by the court"]; cf. *In re Lewallen* (1979) 23 Cal.3d 274, 281 ["a trial judge is precluded from offering an accused in return for a guilty plea a more lenient sentence" or "imposing a more severe sentence because the accused elects to proceed to trial" because "[t]rial courts may not . . . chill the exercise of the constitutional right to trial by jury"]; *Dixon*, *supra*, 153 Cal.App.4th at p. 993 ["comments by the court (that it would consider a waiver of the right to a jury trial a mitigating factor at sentencing) were an improper promise of a benefit for waiving a fundamental constitutional right"].)

Finally, Luke has not explained what he believes the court should have done under the circumstances.  For example, Luke does not contend that the court somehow should have found a way to set a jury trial earlier; as stated, Luke concedes the court's description of its calendar and the delay associated with a jury trial was accurate.  Nor does Luke argue the court should have

11

set a court trial for several months later so that Luke would not have the conservatorship petition resolved earlier.[3]  Perhaps the trial court could have withheld the information about the delays in jury trials and waited to set the matter for trial until after Luke had elected a court or a jury trial.  But under the circumstances, the court's decision to give Luke more information, rather than less, was not coercive.

We emphasize that the trial court made its statements about the delay in jury trials in the very unique circumstances of a pandemic and that, in this context, the court's statements were not coercive.  We have no occasion in this appeal to decide whether structural obstacles to a conservatee's ability to obtain a jury trial in a timely manner or a "systemic 'breakdown'" (*Vermont v. Brillon* (2009) 556 U.S. 81, 94 [129 S.Ct. 1283, 173 L.Ed.2d 231]) of the jury trial system in conservatorship cases, not caused by a global health emergency, would implicate the conservatee's statutory or constitutional rights.  (Compare *Conservatorship of Jose B.* (2020) 50 Cal.App.5th 963, 974 [unexplained 137-day delay in a conservatee's jury trial was "troubling"] with *U.S. v. Olsen* (9th Cir. 2021) 995 F.3d 683, 695 ["[t]he pandemic is an extraordinary circumstance," and "considering the continued public health and safety issues posed by COVID-19," proceeding with jury trials "would risk the health and safety of those involved, including prospective jurors, defendants, attorneys, and court personnel"] and *U.S. v. Foley* (D.Conn. Oct. 22, 2020, No. 18-CR-333) 2020 WL 6198949, p. 10

---

[3]    Had the court done so, it likely would have violated the LPS Act.  (See § 5365 [ "[a] hearing shall be held" on a petition for reappointment of a conservator "within 30 days of the date of the petition"].)

12

[delay in a jury trial "caused by the Court's need to prepare for jury selection and trial amidst the pandemic that continues to kill thousands of Americans" weighed strongly against a finding of violation of the defendant's speedy trial rights].)

**DISPOSITION**

The order is affirmed.  Public Guardian's request for judicial notice is denied.

SEGAL, Acting P. J.

We concur:

FEUER, J.

IBARRA, J.*

---

*       Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.