Filed 12/17/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| Conservatorship of the Person of JOANNE R. | B310906 (Los Angeles County Super. Ct. No. ZE043096) |
| RICHARD STUSSER, as Conservator, etc., | |
| Petitioner and Respondent, | |
| v. | |
| JOANNE R., | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa R. Jaskol, Judge. Affirmed.

Rudy Kraft, under appointment by the Court of Appeal, for Objector and Appellant.

Ellen S. Finkelberg for Petitioner and Respondent.

————————————

Joanne R. is a conservatee subject to a conservatorship under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code,[1] § 5000 et seq.). Joanne contends the trial court provided her an inadequate jury trial waiver advisement and improperly induced her to waive her right to a jury trial by stating she could either have a court trial that day or a jury trial nine months later. Although we are concerned by the delay in providing conservatees jury trials during the COVID-19 pandemic, we conclude there was no violation of Joanne's statutory right to a jury trial.

However, we caution the superior court that a nine-month delay for a conservatee to have a jury trial where the conservatorship would otherwise end in a year, absent a health emergency, raises serious constitutional concerns in light of the significant liberty interests at stake. A conservatee's right to a jury trial has little meaning if the conservatee can only exercise that right after spending nine months of a one-year term in a custodial setting. Indeed, in this case, because the pretrial hearing was delayed due to the pandemic, the jury trial would have taken place just one month before the conservatorship was scheduled to expire. This delay strays far from the statutory requirement in section 5350, subdivision (d)(2), that a "[c]ourt or jury trial shall commence within 10 days of the date of the demand," unless the attorney for the proposed conservatee requests up to a 15-day continuance.

As we stated in *Conservatorship of Jose B.* (2020) 50 Cal.App.5th 963, 967, "We are deeply troubled by the

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

significant delay of over four months in holding a trial on [the] petition, especially given the lack of any justification by the court for most of the delay.  [The conservatee] contends trials on conservatorship petitions are routinely continued by the trial courts in violation of the 10-day requirement."  At oral argument in this case, counsel stated that even pre-pandemic, jury trials were consistently delayed well beyond the four-month period at issue in *Jose B.*  We urge the superior court to dedicate the necessary additional resources to LPS jury trials so that conservatees may exercise their right to a jury trial in a timely manner.  Failure to do so likely violates a conservatee's constitutional right to due process.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Conservatorship*

On November 9, 2018 the trial court found Joanne was unable to provide for her personal needs as a result of mental illness, she needed intensive psychiatric treatment, and she was on a 30-day hold under section 5270.15 based on a finding she was gravely disabled.  The court appointed the Los Angeles County Office of the Public Guardian as the temporary conservator of Joanne's person.  On December 12, 2018 the court found Joanne was gravely disabled and appointed Richard Stusser[2] as the conservator of Joanne's person.  On December 11,

---

[2]     Stusser is a private conservator who agreed to serve as Joanne's conservator at her family's request.

2019 the trial court granted Stusser's petition to be reappointed as Joanne's conservator, with the order terminating on December 12, 2020.

B.    *Stusser's Petition for Reappointment as Conservator of Joanne's Person*

On November 25, 2020 Stusser filed a petition for reappointment as Joanne's conservator. On December 9 Stusser filed a declaration from Joanne's treating psychiatrist, Dr. Dirk de Brito, who evaluated Joanne the prior day. Dr. de Brito stated Joanne was diagnosed with disordered schizophrenia and continued to have severe delusions, including that she was gainfully employed. Joanne was unable to provide for her food, clothing, or shelter, but she "refuses any idea that she needs help." However, Joanne was currently taking prescribed medication in her residential care facility.

At a December 10, 2020 hearing, which Joanne attended by telephone, her attorney contested the conservatorship. Joanne's attorney requested the appointment of Dr. Alete Arom to assess Joanne's capacity and whether Joanne had a grave disability. In addition, Joanne's attorney requested a "court trial in late January on a Thursday if possible." The trial court appointed Dr. Arom "to report on grave disability and capacity to waive jury trial." The court set a court trial for February 4, 2021, with the trial to be conducted by videoconference. The court found "good cause for the continuance based on the pandemic" and its effect on the court's calendar.

4

At the February 4, 2021 videoconference hearing, with Joanne on the telephone,[3] the trial court informed Joanne, "[I]f you do not want to agree to have your conservator appointed for another year then you have a right to a trial. And there are two kinds of trials that you can have. One kind of trial is called a court trial. And with the court trial the judge hears the evidence and then the judge decides if the evidence proves beyond a reasonable doubt that you are gravely disabled. And, if the court makes that decision, then the conservatorship will continue for another year. [¶] The other kind of trial that you can have is a jury trial. With a jury trial 12 people from the community come to court and those 12 people are the jury. And a jury trial would involve those 12 people, the jury, hearing the evidence and then making a decision about whether the evidence proves beyond a reasonable doubt that you are gravely disabled. And the jury would have to decide that you're gravely disabled unanimously, which means that all 12 jurors would have to agree. [¶] So if you would like to have a court trial with the judge making the decision we can do that today. If you would like to have a jury trial then we can do that as well, but we won't be able to do it today. We can reschedule and do that in November. [¶] Do you know which kind of trial you'd like to have?" Joanne answered, "Well, I would prefer a jury trial, but I don't want to wait until November. I want to do it as soon as possible."

The court then stated, "Okay. Well, then, you will need to make a decision about whether you want to have the court trial with the judge today or whether—." Joanne interrupted and

---

[3]     Joanne attended the hearing by telephone because she had difficulty appearing by videoconference.

inquired, "If I win, that's fine. If I lose, when can I contest it again?" The court replied, "Well, you'd have to discuss that with your lawyer." Joanne said, "Okay. I think that I want to go ahead today and do it." The court inquired, "Now, do you understand that if you have the court trial today with the judge you will not be able to have a jury trial for another year? [¶] Do you understand that?" Joanne answered, "Yeah."

C.      *The Court Trial and Reappointment of the Conservator*

The court trial proceeded immediately after Joanne waived her right to a jury trial. Stusser called Dr. de Brito, who opined Joanne was gravely disabled. Joanne suffered from disorganized schizophrenia and had "very limited insight into her condition." Further, she had delusions and could not formulate a specific plan for self-care, including for food, clothing, and shelter. Dr. de Brito stated further that if the conservatorship terminated, Joanne would not take her prescribed medication.

Joanne acknowledged in her testimony that she suffered from schizophrenia. She stated that if she were released from the conservatorship, she would continue to take her medication and meet regularly with a psychiatrist. She asserted she could take care of herself, including changing her own clothing, and she could manage her own money. But she admitted her brother, Thomas Wolfe, was the conservator of her estate. Joanne claimed she had monthly income of at least $5,000 from her estate, including from her teacher's pension, and another $5,000 per month from employment as a radio announcer at NBC Radio and Television Worldwide.

Joanne testified that at the time of the hearing, she was living in a senior residence facility that provided meals,

6

caregivers, and laundry services. Joanne had four options for where to live prospectively. NBC had offered her housing, meals, and a car and driver. Joanne's cousin also had arranged for a home, and she invited Joanne to live in a room Joanne would share with a caregiver who would provide Joanne with meals and maid service. Joanne would not need a car, but she still had a license in good standing.

Wolfe testified for Stusser as a rebuttal witness. Wolfe had been appointed by the Orange County Superior Court as the conservator of Joanne's estate. He stated Joanne received interest from certificates of deposit but "the only other income would be approximately $1,047 from [Joanne's] teacher's pension." Joanne interjected, "I thought that I had more of an income so I didn't mean to mislead the court in any way." The court did not inquire further as to Joanne's available funds. Wolfe opined Joanne did not have the ability to manage her funds to meet her basic needs.

Following arguments from counsel, the trial court found Stusser had carried his burden of proving beyond a reasonable doubt that Joanne had a grave disability. The court granted Stusser's petition for reappointment as the conservator of Joanne's person and found "the least restrictive placement is in an assisted-living facility."

Joanne timely appealed.

## DISCUSSION

A.    *The LPS Act*

"The LPS Act governs the involuntary detention, evaluation, and treatment of persons who, as a result of mental

7

disorder, are dangerous or gravely disabled.  (§ 5150 et seq.)  The
Act authorizes the superior court to appoint a conservator of the
person for one who is determined to be gravely disabled (§ 5350
et seq.), so that he or she may receive individualized treatment,
supervision, and placement (§ 5350.1)."  (*Conservatorship of
John L.* (2010) 48 Cal.4th 131, 142; accord, *Conservatorship of
Jose B., supra*, 50 Cal.App.5th at pp. 969-970.)  "As defined by the
Act, a person is 'gravely disabled' if, as a result of a mental
disorder, the person 'is unable to provide for his or her basic
personal needs for food, clothing, or shelter.'  (§ 5008, subd.
(h)(1)(A).)"  (*John L.*, at p. 142; accord, *Jose B.*, at p. 970.)  An
LPS conservatorship automatically terminates after one year,
and the conservator may seek reappointment by filing a petition.
(§ 5361.)  A proposed conservatee has a right to a jury trial upon
demand at the establishment and annual renewal of a
conservatorship.  (*Conservatorship of Ben C.* (2007) 40 Cal.4th
529, 541-542; *Jose B.*, at p. 970; see § 5350, subd. (d).)

B.      *Jury Trial Waivers Under the LPS Act*
        "LPS commitment proceedings require the court to obtain a
personal waiver of the right to a jury trial from the proposed
conservatee."  (*Conservatorship of Heather W.* (2016)
245 Cal.App.4th 378, 383; see Prob. Code, § 1828, subd. (a)(6).)[4]
Generally, with respect to civil commitments, the failure of a
court to obtain a valid jury trial waiver where required by statute

---

[4]      Probate Code section 1828, subdivision (a)(6), which is
incorporated into the LPS Act by Welfare and Institutions Code
section 5350, requires the trial court to inform the proposed
conservatee of his or her right to a jury trial.

8

"denies the defendant his or her statutory right to a jury trial," and is a "'miscarriage of justice' within the meaning of article VI, section 13 [of the California Constitution] [that] requires reversal without inquiry into the strength of the evidence in a particular case." (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1132-1133 [failure to obtain valid jury trial waiver from mentally disordered offender in civil commitment proceeding was reversible error]; accord, *People v. Tran* (2015) 61 Cal.4th 1160, 1169 [trial court's acceptance of invalid jury trial waiver in commitment proceeding for defendant who pleaded not guilty by reason of insanity "is not susceptible to ordinary harmless error analysis and automatically requires reversal"]; see *Heather W.*, at pp. 384-385 [trial court's failure to advise LPS conservatee of her right to a jury trial was reversible error]; *Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1253 [reversing conservatorship order where trial court erred in accepting counsel's waiver of LPS conservatee's right to jury trial over conservatee's objection]; but see *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 917-919 [trial court's failure to personally advise proposed conservatee of right to a jury trial was statutory error, but error was harmless; and court's acceptance of counsel's waiver of jury trial right did not violate proposed conservatee's rights].)

Stusser acknowledges that the case law governing criminal proceedings provides guidance for LPS civil commitment proceedings. In a criminal proceeding, "'a defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, ""made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,"'" as well as voluntary ""'in the sense that it was the product of a free and deliberate

9

choice rather than intimidation, coercion, or deception.""""""
(*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*);
accord, *People v. Cunningham* (2015) 61 Cal.4th 609, 636-637.)[5]

     "'[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.'" (*Sivongxxay*, *supra*, 3 Cal.5th at p. 166.) In determining whether a defendant has provided a knowing and intelligent waiver, we "examine the totality of the circumstances." (*Id*. at p. 167.) The Supreme Court in *Sivongxxay* provided "general guidance to help ensure that a defendant's jury trial waiver is knowing and intelligent, and to facilitate the resolution of a challenge to a jury waiver on appeal." (*Id*. at p. 169.) Although the guidance was "not intended to limit trial courts to a narrow or rigid colloquy" (*id*. at p. 170), the Supreme Court explained, "Going forward, we recommend that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence . . . . Ultimately, a court must consider the defendant's individual circumstances and exercise judgment in deciding how best to ensure that a particular

---

[5] Because the parties agree the jury trial waiver standard in *Sivongxxay* applies here, we assume, but do not decide, that the standards for jury trial waivers applicable in criminal proceedings apply to LPS proceedings.

defendant who purports to waive a jury trial does so knowingly and intelligently." (*Id.* at pp. 169-170.)

In *Sivongxxay*, the Supreme Court concluded the defendant's waiver of his right to a jury trial was knowing and intelligent where the trial court had advised him "that he had a right to a jury trial, that a jury consists of 12 people from the community, that he would have the right to participate in the selection of the jury, and that waiver of the right to a jury would mean the judge alone would determine his guilt or innocence and any resulting punishment." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.) The court rejected the defendant's argument that the jury waiver was deficient because the trial court failed to advise him that the jury must be impartial and render a unanimous verdict, explaining, "'[T]he United States Supreme Court has never held that a defendant, when waiving the right to a jury, constitutionally is entitled to be canvassed by the trial court, let alone to require a specifically formulated canvass' [citations], and we have never insisted that a jury waiver colloquy invariably must discuss juror impartiality, the unanimity requirement, or both for an ensuing waiver to be knowing and intelligent." (*Id.* at p. 168, fn. omitted; accord, *People v. Daniels* (2017) 3 Cal.5th 961, 992-993 (lead opn. of Cuéllar, J.) ["We continue to eschew any rigid rubric for trial courts to follow in order to decide whether to accept a defendant's relinquishment of this right."]; *id.* at p. 1018 (conc. & dis. opn. of Corrigan, J.) ["We have consistently eschewed any rigid formula or particular form of words that a trial court must use to ensure that a jury trial waiver is knowing and intelligent."].)

11

C.     *The Trial Court's Jury Trial Advisement Was Not Deficient Under the Totality of the Circumstances*

Joanne contends the trial court's jury waiver advisement was inadequate because the court did not inform her that she could participate in jury selection through her attorney. But as the Supreme Court held in *People v. Weaver* (2012) 53 Cal.4th 1056, 1072-1074, the lack of an advisement that a defendant has the right to participate in jury selection does not automatically render a jury trial advisement invalid. Joanne argues *Weaver* is no longer good law in light of the Supreme Court's later decision in *Sivongxxay*. To the contrary, the *Sivongxxay* court cited *Weaver* with approval in holding that in reviewing the totality of the circumstances, the absence of a specific advisement "is not necessarily determinative of whether a waiver meets constitutional standards." (*Sivongxxay, supra*, 3 Cal.5th at p. 168.)

The trial court advised Joanne that a jury is comprised of 12 people from the community; the jury would hear the evidence and then decide whether the evidence proves beyond a reasonable doubt she is gravely disabled; and the jury would need to make a unanimous decision, meaning that all 12 jurors would need to agree. The court contrasted this with a court trial in which the judge would hear the evidence and make the decision whether the evidence proves beyond a reasonable doubt she is gravely disabled. The court's failure to advise that Joanne, through her counsel, had the right to participate in jury selection did not invalidate her jury waiver given the other advisements that informed Joanne of "the essence of the jury trial right." (*People v. Daniels, supra*, 3 Cal.5th at p. 1019 (conc. & dis. opn. of Corrigan,

12

J.).) Under the totality of the circumstances, Joanne's jury trial waiver was knowing and intelligent.

D. *Joanne's Jury Trial Waiver Was Voluntary*

Joanne contends the trial court improperly induced her to waive her right to a jury trial by advising her that she could have an immediate court trial or wait until November (nine months later) for a jury trial. Although we are troubled by the delay in the availability of a jury trial, there was no improper inducement.[6]

Joanne likens her case to *People v. Collins* (2001) 26 Cal.4th 297, 312 (*Collins*), in which the Supreme Court concluded the trial court improperly induced the defendant to waive his right to a jury trial, rendering his jury trial waiver involuntary. There, the trial court told the defendant "'there might well be a benefit'" to the defendant from waiving his right to a jury trial because "'[j]ust by having waived jury, that has some effect on the court . . . [b]y not taking up two weeks' time to try the case.'" (*Id*. at p. 302, italics omitted.) The trial court added, "'I'm not specifying that there's any particular benefit, but that by waiving jury, you are getting some benefit, but I can't tell you what that is because I don't know yet.'" (*Ibid.*, italics

---

[6] Joanne does not argue in her briefing on appeal that the delay in providing a jury trial violated her due process right to a timely trial. Her attorney belatedly raised a due process concern at oral argument, but we did not request supplemental briefing given that the delay was caused by the COVID-19 pandemic and the appellate record does not include information on pre-pandemic delays.

13

omitted.) The Supreme Court found the trial court's offer of a reward to the defendant for refraining from exercising his constitutional right to a jury trial was improper because it "presented a 'substantial danger of unintentional coercion,'" thereby violating his right to due process. (*Id.* at p. 309.)

Unlike *Collins*, the trial court did not offer to reward Joanne for waiving her right to a jury trial, instead simply advising her of the reality of when she could have a court or jury trial. After advising Joanne that she could have a court trial that day but a jury trial could not be scheduled until November, the court inquired, "Do you know which kind of trial you'd like to have?" Joanne answered that she preferred to have a jury trial, but she did not want to wait until November, emphasizing, "I want to do it as soon as possible." The court again reminded Joanne that she needed to decide which type of trial she wanted, and when Joanne interjected to ask when she could challenge her commitment again, the court urged her to talk with her lawyer. At this point, Joanne confirmed she wanted to proceed with a court trial that day. At no time did the trial court suggest Joanne would be rewarded if she elected to waive a jury trial—to the contrary, the court encouraged her to talk to her lawyer before making a decision. (See *United States v. Leja* (1st Cir. 2006) 448 F.3d 86, 95 [district court did not coerce defendant to waive his right to a jury trial even though the court indicated "a jury might have difficulty with the complexity of the case," where the court also stated "'I'm not pushing anybody'"].)[7]

---

[7] Joanne also argues the record does not contain an adequate explanation for why she could not receive a jury trial until November 2021. But in setting the February 4, 2021 trial date,

14

Under the circumstances, the trial court's statement that Joanne could receive a court trial that day or wait nine months for a jury trial provided Joanne with complete information to enable her to make a knowing, intelligent, and voluntary decision whether to waive her right to a jury trial. The fact she elected to proceed expeditiously with a court trial did not make her decision involuntary.

## DISPOSITION

The order is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.

---

the trial court found "good cause for the continuance based on the pandemic" and its effect on the court's calendar.

15